## ROGERS *v.* ROGERS.*

(Division A. ' Oct. 29, 1928. Suggestion of Error Overruled Nov. 26, 1928.)

[118 So. 619. No. 27380.]

*Corpus Juris-Cyc. References: Marriage, 38CJ, section 70, p. 1305, n. 50. On right to avoid marriage entered into to escape prosecution for seduction, upon ground of duress, see annotation in 43 L. R. A. 816; 16 L. R. A. (N. S.) 938; 9 R. C. L. 305.

*F. M. Glass,* for appellant.

*A. H. Bell,* for appellee.

Argued orally by *F. M. Glass,* for appellant.

Cook, J. The appellee filed a bill of complaint in the chancery court of Carroll county, seeking to have the marriage entered into between him and the appellant, Docia Hearon Rogers, annulled, on the ground that his consent thereto was obtained by duress, alleging that he was approached by two deputy sheriffs and certain relatives of the appellant, who informed him that an affidavit had been filed against him, charging him with the rape of the said Docia Hearon, and that, unless the appellee married her, he would immediately be tried for said offense and hanged, and further alleging that his consent to the said marriage ceremony was obtained by the procurement of the relatives of the defendant, acting for her and in her behalf, under duress, and under the threat that he would be hanged, which threat he then believed was about to be carried into execution unless he consented to the marriage. The appellant, defendant in the court below, filed an answer, and made her answer in a cross-bill, seeking to recover alimony, both temporary and permanent. At the conclusion of the trial the court entered a decree dissolving the marriage and dismissing the appellant's cross-bill, and from this decree this appeal was prosecuted.

In the testimony bearing upon the question of duress in the consummation of the marriage between the appellant and the appellee, there is no material conflict. This testimony shows that on the 29th day of May, 1926, the day before the child was born to the appellant, she made an affidavit against the appellee, charging him with the violation of what is known as "the age of consent statute" (section 1148, Hemingway's 1927 Code), which prescribed a maximum penalty of five years' imprisonment in the state penitentiary. Upon this affidavit a warrant was issued and placed in the hands of a deputy sheriff; and this deputy sheriff, accompanied by another deputy, and a brother and brother-in-law of the appellant, proceeded to the home of the appellee. Arriving at the home

of the appellee, the deputy sheriff called him out to the gate, and there served the warrant for his arrest by reading it to him. There followed a discussion between the parties present, including the father and mother of the appellant, and the testimony for the appellee is to the effect that he was told that the offense charged against him was a hanging offense, and that he believed these statements to be true. The deputy sheriff who arrested the appellee admitted that he told him that it was a hanging offense. There were no weapons exhibited, and the appellee testified that no threats were made, except the statement that he would be hanged for the offense. After a conference with the appellee and the members of his family, he agreed to marry the appellant. Thereupon one of the deputy sheriffs and a relative of the appellant went to the courthouse and secured a license for the marriage, while the appellee, accompanied by his father and the deputy sheriff went to the home of appellant, and carried her to the home of Mr. Wright, the deputy sheriff who secured the license, and there the marriage ceremony was performed, the father of appellee paying for the license and the fee charged for performing the ceremony. After the marriage ceremony, the appellee returned to his home, while the appellant returned to the home of her father, and they have never cohabited together.

The proof in this record shows a total absence of any direct threats of bodily harm previous to or at the time of the marriage, and the only fact in evidence by which it is sought to establish coercion or duress is the fact that the appellee was erroneously informed by the parties present that the penalty for the offense with which he was charged was death. The deputy sheriff who arrested the appellee testified that he informed him that the prosecution of the charge for which he had been arrested would be stopped if he married the appellant, and, while the appellee denied that the deputy sheriff made this

statement to him, from all the testimony in the record the conclusion is inescapable that the appellee consented to the marriage to escape the penalty for the offense with which he was charged. This being true, his action was voluntary in a legal sense, and he cannot have the marriage annulled on the ground that he was coerced; and this is true, although he erroneously believed that the penalty for the offense with which he was charged was greater or more severe than that actually fixed by law. This doctrine is announced in 9 R. C. L., pp. 304 and 305, in the following language:

"The courts recognize that the seducer has done no more than he ought to have done, and in case of doubt prefer to attribute his action to the better motives of remorse for the wrong done and to a sense of justice. Certainly if the seducer through fear of the natural and probable consequences of his conduct married to escape them it would not be such duress as would avoid the marriage in the absence of any force or direct threat of bodily harm at the time of the marriage. . . .

"It is a well-recognized general rule that where a man arrested for seduction or bastardy marries the woman in order to escape the penalty for that offense, his action is voluntary in a legal sense and he cannot afterwards have the marriage annulled on the ground that he was coerced. Nor is the rule affected by the fact that the charge, preferred in good faith, could not have resulted in a conviction, nor by a misunderstanding as to the length of the term of imprisonment for the offense charged."

The decree of the court below, annulling the marriage, and dismissing the cross-bill, will therefore be reversed, and the cause remanded.

*Reversed and remanded.*