## HUNT v. HUNT.

(Division A. April 15, 1935. Suggestion of Error Overruled May 13, 1935.)

[161 So. 119. No. 31625.]

Gabe Jacobson and J. B. Truly, both of Meridian, for appellant.

Russell **Wright,** of Meridian, for appellee.

Argued orally by **J. B. Truly** and 'Gabe Jacobson, for appellant, and by **Russell Wright**, for appellee.

**Smith, C. J.,** delivered the opinion of the court.

The appellant, by next friend, sued the appellee for an annulment of a marriage between them, alleged to be void. The case was heard on bill, answer, and proof, resulting in the dismissal of the bill of complaint. The marriage was a ceremonial one, but the license under which it was solemnized was irregularly issued;. consequently, the validity of the marriage depends upon the curative provisions of chapter 237, Laws 1930, which appears as section 2363, Code 1930.

The case presented by the record is, in substance, as follows: The appellant is a member of the Roman Catholic Church, and, at the time the marriage ceremony was performed, was thirteen years and ten months old. The appellee is a Protestant, and at the time of the ceremony, was nineteen years old. They both lived in Lauderdale county. On the night of October 30, 1933, they went into Clarke county, obtained a marriage license from the clerk of the circuit court thereof, and on the same night a marriage was solemnized between them by a justice of the peace. They returned to the

home of the appellant's mother, with whom she lived, about five o'clock the next morning and advised her of their marriage. She was very much disturbed thereby, and reminded her daughter that the marriage was without the sanction of her church. Their local priest, Father Burns, was then called, and on being requested to sanction the marriage, stated that he would have to consult the bishop, but that he would probably sanction it when, but not until, the appellant reached the age of fourteen. The appellee then left the residence of the appellant's mother and went to the home of his parents with whom he lived. The appellant remained with her mother for about three weeks, and then went to the home of the appellee, where she ramained for three weeks, at the expiration of which time she returned to her mother for the reason that Father Burns had indicated that he would not sanction their marriage. During the three weeks that she was in the home of the appellee, she and the appellee slept together in a room apart from others, and otherwise publicly acted as if they were man and wife. Both of them, however, say that, pursuant to an agreement with the appellant's mother, and between themselves, they refrained from any act of coition. Although against nature, we may, for the present purpose, accept this statement as true.

Counsel for the appellant say, in substance, that this marriage is void: (a) Under the statute, for the reason that the marriage license having been issued by a clerk of the circuit court of a county in which the appellant did not reside is void, and therefore the curative provisions of the statute do not apply thereto; (b) at common law, for the reason that the ceremonial marriage was void, the parties thereto before cohabitation thereunder disregarded it, and entered into a new agreement for a marriage in futuro (i. e., they would marry when, but not until, Father Burns would sanction it), and that

cohabitation under such an agreement does not consummate a marriage. They say further that if the marriage was not void, it was voidable at the appellant's election before becoming eighteen years of age for the reason that section 3245, Code 1906, now section 2362, Code 1930, has raised the common-law age of capacity for marriage of females from twelve years to fourteen.

1. Was the clerk of the circuit court of Clarke county authorized by the statute to issue the license? Section 3245, Code 1906, which now appears as section 2362, Code 1930, provides that: "Marriage licenses shall be granted and issued by the clerk of the circuit court of the county in which the female usually resides, under the following regulations and restrictions," etc. Section 2363 of the printed Code of 1930 provides that: "It shall be unlawful for the circuit court clerk to issue a marriage license until the following conditions precedent shall have been complied with: a. Parties desiring marriage license shall make application therefor in writing to the clerk of the circuit court of any county in the state of Mississippi and forthwith file the same with the clerk," etc. Sections of the Code dealing with the same subject-matter should be read together and apparent conflicts thereunder harmonized, if possible. When this is here done, counsel for the appellant say that it will appear that the Legislature did not by section 2363, Code 1930, intend to confer the power to issue a marriage license on the clerk of the circuit court of a county other than that in which the female usually resides. In other words, section 2363, Code 1930, when read in connection with section 2362, Code 1930, should be construed as if it read: "Parties desiring a marriage license shall make application therefor in writing to the clerk of the circuit court of any county in the State of Mississippi in which the female usually resides."

If section 2363 were in fact a part of the Code of 1930, it might be difficult to answer this argument; but the difficulty disappears when we remember that section 2363 is not a part of the Code adopted by the Legislature, and does not appear in the enrolled copy thereof filed with the Secretary of State. That section is chapter 237, Laws 1930, at which session the Code was adopted and was placed in the printed Code by the Attorney-General pursuant to a requirement of the statute by which the Code was adopted, and which appears as a preface to the printed Code beginning with page 157 thereof (Laws 1930, chapter 210). Section 7 of that statute gave the Attorney-General supervision over the publication of the Code, and, among other things, provides: "Under the supervision of said attorney-general, the said Harrison Company [the publishers] shall include in said code all of the statutes of a general nature, and suitable to ·become a part of said code, which have been or shall be passed at the present regular 1930 session of the legislature, which acts shall be properly placed either under old chapters or under new chapter headings as shall be logical, suitable and harmonious with the remainder of said code, and said acts shall be properly sectioned and annotated. Where the said acts shall repeal or be in conflict with any of the provisions of said code, the same shall be inserted in the place of and/or in lieu of said code's provisions."

Other provisions of the statute are as follows:

Section 8: "There shall be printed with the Mississippi Code of 1930 the laws of a general nature passed by the regular 1930 session of the legislature inserted in the proper places," etc.

Section 13: "The acts of legislature passed at this session shall take effect and be in force as prescribed in each of said acts, whether or not the same are inserted in

this code, except as may be otherwise provided in said acts, and shall be printed in the session acts of this year.''

Section 15: ''The Mississippi Code of 1930 shall take effect and be in force from and after the first day of November, 1930, and all laws of a general character not brought forward or embodied in said code, except laws granting exemptions from taxation for a period of years, shall be thereafter repealed; but this shall not apply to any act of the present legislature which is not incorporated in said code.''

A concurrent resolution adopted by the Legislature at its 1930 session (Laws 1930, chapter 285), and which appears at page 161 of the printed Code, provides: ''The enrolled bills of said laws of 1930, passed at the regular session aforesaid, shall as filed with the secretary of state control in all cases over the same as published in said code, any change or omission as hereby authorized to the contrary notwithstanding.'' It thus clearly appears that the Legislature intended that the statutes enacted at this 1930 session should supersede any provision of the Code adopted at that session in conflict therewith.

Chapter 237, Laws 1930, was adopted in May of that session and became effective on June 1, 1930, the title of which is: ''An Act to revise the laws of the State of Mississippi relating to marriage; to provide the terms, conditions and manner in which licenses to marry will be issued and marriage solemnized; and to provide punishment and penalties for violation of this Act.''

Section 1 thereof provides: ''That it shall be unlawful for the Circuit Court Clerk to issue a marriage license until the following conditions precedent shall have been complied with: a. Parties desiring marriage license shall make application therefor in writing to the Clerk of the Circuit Court of any County in the State of Mississippi and forthwith file the same with the Clerk, which said

application shall state the names, ages and addresses of the parties applying, and shall state the name and addresses of both contracting parties' parents, and if no parents, guardian, if any, and if no guardian, the next of kin. The application shall be sworn to by the male applicant."

Other paragraphs of the section and other sections of the chapter provide that the license shall not be issued until the expiration of five days after application is made therefor, unless the circuit judge shall authorize its earlier issuance for the giving of notice to the parents or guardian of the contracting parties, and a method for their contesting the issuance of the license.

Section 6 thereof provides: "That all laws or parts of laws in conflict with the provisions of this Act be and the same are hereby repealed, but all laws or parts of laws not in direct conflict with the provisions of this Act shall be and remain in full force and effect."

The marriage statute in force when chapter 237, Laws of 1930, was enacted, was chapter 95, Code 1906, section 3245 of which, now section 2362, Code 1930, deals with the issuance of a marriage license. This section was repealed by chapter 237 in so far as it conflicts therewith. The grant of power in chapter 237 to the clerk of the circuit court of *any* county to issue a marriage license when applied to therefor, and when a prescribed procedure for the issuance thereof has been complied with, clearly conflicts with the restriction of this power in section 3245, Code 1906, to a particular clerk, and there is nothing in either statute that would warrant the court in narrowing this power by interpretation. The reason for granting this power to the clerk of the circuit court of any county was probably the well-known fact that the requirement of section 3245, Code 1906, for the issuance of a marriage license by the clerk of the county of the female's residence, was frequently innocently dis-

regarded by persons who were under no disability what-ever. The right of interested persons to object to the marriage is fully protected by the provisions of the stat-ute hereinbefore set out. The license here, therefore, was issued by a clerk of a circuit court who had authority so to do.

2. Was the marriage here solemnized, pursuant to the license issued therefor, void?

Section 5, chapter 237, Laws 1930, is as follows: "The failure to comply with the provisions of this Act shall not affect the validity of any marriage duly solemnized, followed by cohabitation, nor the validity of common law marriages as heretofore recognized in the State."

This marriage was solemnized by an officer authorized so to do by section 2366, Code 1930, and is therefore valid, notwithstanding the failure of the clerk who issued the license to comply with the procedure therefor, if the conduct of the parties pursuant thereto constitutes co-habitation within the meaning of the statute.

The word "cohabitation" as used in the marriage laws means the public assumption by a man and a woman of the marital relation, and dwelling together as such, thereby holding themselves out to the public as being man and wife. But counsel for the appellant say that cohabitation is not within the meaning of the statute unless it is accompanied by coition. In this they are in error, but such is not required. That cohabitation may be without coition is not expressly held in our former decisions, but is implicit therein and is supported by courts and jurists of high authority.

But it is said that the cohabitation here was not pur-suant to the marriage ceremony that was solemnized, but to a subsequent agreement between the parties for a marriage in futuro. A subsequent agreement between the parties to a ceremonial marriage as to the effect thereof cannot displace and render ineffective the pro-

vision of the statute which expressly validates "any marriage duly solemnized, followed by cohabitation." Cohabitation following a marriage solemnized without compliance with the statute validates the marriage, a contrary intention of the cohabitants notwithstanding. It may be that circumstances may intervene between an irregular marriage ceremony and cohabitation between the parties thereto of such character as to prevent the cohabitation validating the marriage (e. g., a valid marriage by one of the parties subsequent to a ceremonial marriage to another, and before cohabitation by them), as to which we express no opinion. It is true that the cohabitation here did not immediately follow the marriage ceremony; but the period of time intervening is too short for any question to arise relative thereto, assuming, for the purpose of argument, that the time between the ceremony and the cohabitation, if of great length, could be held to prevent the cohabitation from validating the marriage. This marriage is valid under the statute without reference to what its validity vel non may be at common law.

3. Is the marriage voidable by the appellant, and, therefore, within the power of the court to annul it for the reason that she was less than eighteen years of age at the time it was contracted?

Section 3245, Code 1906, section 2362, Code 1930, does not raise the age at which a female becomes capacitated to marry from twelve years. It simply provides that a license shall not be issued therefor without the consent of her parents or guardian if she is under the age of eighteen years. We will assume that this provision of the statute was not repealed by chapter 237, Laws 1930. The basis of this assumption is that section 2 of chapter 237 provides that the license may be issued without complying with the provisions of the statute when it is made to appear to the circuit clerk in a particular manner that

the contracting parties "are over the statutory age" for marriage.

The statute does not require the clerk to know or be advised that the parties applying to him for a marriage license are eighteen or twenty-one years of age, as the case may be, but requires him only to give notice of the application to parties interested therein, so that they may appear and contest the issuance of the license, one of the grounds of which may be that one or both of the parties are within the age requiring the consent of parent or guardian. The statute does not affect the right of a minor under the age of eighteen or twenty-one years, as the case may be, to consent to a marriage; that right remains as at common law. It only authorizes their parents or guardian to object to the issuance of a license for the marriage.

We are not confronted here with a case where no marriage license was issued, and, therefore, are not called on to say whether the provision of section 2367, Code 1930, which makes a license essential to the validity of a marriage, is repealed by chapter 237, Laws 1930, for such a license was here issued.

Affirmed.