ZEIGLER *v.* ZEIGLER.

(Division B. Dec. 9, 1935.)

[164 So. 768. No. 31972.]

P. P. **Lindholm**, of Lexington, for appellant.

304

Johnson & White, of Lexington, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee, Mrs. Sadie Marshall Zeigler, minor, by her father as next friend, filed her bill in the chancery court of Holmes county against appellant, her husband, living apart from him, seeking a decree for separate maintenance and support for herself and minor child. The cause was heard on bill, answers, cross-bill, and proofs, resulting in a decree in appellee's favor in the sum of twelve dollars a month and attorney's fee. From that decree, appellant prosecutes this appeal.

Appellant defended upon the ground that he was not the husband of appellee, and this was based on two contentions, first, that although they were ceremonially married, the marriage was brought about by duress and therefore void; second, that in the issuance of the marriage license, chapter 237, Laws 1930, section 2363, Code 1930, was not complied with, and for that reason the marriage was void.

The marriage ceremony between appellant and appellee took place on December 31, 1934. On January 25, 1935, a child was born to appellee, which she testified had been begotten by appellant, and the court so found in its decree. At the time of the marriage appellant was over twenty-one years of age and appellee was over eighteen, therefore, under section 2363, Code 1930, they were competent to enter into the marriage relation without consent of their parents or any one else.

On December 30th, appellant was about to leave the state. Appellee's father, in order to prevent him from so doing, preferred the charge against him before a justice of the peace of Holmes county of violating section 1123, Code 1930, which makes it a felony for a male person to have carnal knowledge of an unmarried female of previous chaste character younger than himself and over twelve and under eighteen years of age. Appellant was arrested on that charge and lodged in jail at Lexington pending his committing trial before a justice of the peace.

Appellee's father, in his testimony, stated that in making the affidavit he overlooked the fact that appellee was over eighteen years of age. While in jail, appellant consulted a brother-in-law of his and other persons as to the course he should pursue, and friends of appellee's father approached him; they all advised him that the criminal prosecution would be "pushed to the fullest extent," and that he had better marry appellee in order to avoid it. Appellant finally agreed to the marriage and turned over to his brother-in-law Hammett five dollars, who, with appellee's father, went to the circuit clerk's office and obtained a marriage license. Hammett made application for the license and paid for the same claiming to act as appellant's agent. Appellee's father signed the application for the license for his daughter. Appellant was in jail, and appellee was not present. Thereupon appellant was released from jail, went to the home of Mr. Reid, a justice of the peace of the county, and was married by him to appellee, the usual marriage ceremony being performed. The justice of the peace properly signed the certificate of marriage and filed the same with the circuit clerk of the county, who filed and recorded it. Appellant immediately deserted appellee and refused to live with her. There was no cohabitation or opportunity of cohabitation between them as man and wife after the marriage.

Did this amount to such duress as to avoid the marriage? We think not. Main v. Main, 113 Miss. 165, 74 So. 138; Rogers v. Rogers, 151 Miss. 644, 118 So. 619. In the Main case the court restated the well-established principle that a marriage is not only a contract affecting the rights of the immediate parties, but is a legal status affecting materially the public, and that where it is sought to annul a marriage contract on the ground of duress it must be shown by clear, satisfactory, and convincing evidence that the duress was dominating throughout the transaction and to the extent of destroying freedom of action. The Rogers case is more directly in point.

Rogers was under arrest charged with the rape of the female he afterwards married; the officer having him under arrest, and others who were his friends, advised him that rape was a capital offense, and that if he did not marry the young lady he would probably be hanged. He agreed to do so and did under those circumstances, after having been released from custody. In that case the court said that the seducer had done no more than he ought to have done. In case of doubt his action would be attributed to good motives rather than wrong; that where a man arrested for seduction or bastardy married the woman in order to escape the penalty for the offense, his action was voluntarly in the legal sense. Neither in the present case nor in the Rogers case was there any threat or demonstration indicating a purpose either to take life or do great bodily harm.

In obtaining the marriage license, paragraph a of chapter 237, Laws 1930, section 2363, par. a, Code 1930, was not complied with. Appellant contends that the failure in that respect avoided the marriage. That paragraph provides, in substance, that parties desiring a marriage license shall make application therefor in writing to the clerk of the circuit court of any county in the state and forthwith file the same with the clerk, which said application shall state the names, ages, and addresses of the parties applying, as well as the names and addresses of their parents, and if no parents, guardian, if any, and if no guardian, the next of kin, and that the application shall be sworn to by the male applicant. The last paragraph of the statute is in this language: "The failure to comply with the provisions of this section shall not affect the validity of any marriage duly solemnized, followed by cohabitation, nor the validity of common law marriages as heretofore recognized in the state."

Section 2367, Code 1930, which had been in force for some years, is in this language: "A marriage shall not be contracted or solemnized unless a license therefor shall first have been duly issued, and such license shall be es-

sential to the validity of a marriage. But no irregularity in the issuance of or omission in the license shall invalidate any marriage, nor shall this section be construed so as to invalidate any marriage that is good at common law.''

Chapter 237, Laws 1930 (Code 1930, section 2363), repeals any provision of the Code of 1930 with which it conflicts. Hunt v. Hunt, 172 Miss. 732, 161 So. 119. Therefore, in so far as the last paragraph of chapter 237, Laws 1930, conflicts with section 2367, Code of 1930, the former repeals the latter. The first paragraph of chapter 237, Laws 1930, should be read in connection with the last paragraph; it provides that ''it shall be unlawful for the circuit court clerk to issue a marriage license until the following conditions precedent shall have been complied with.'' It will be seen at once that the main, if not the only material difference between the two provisions is the language in chapter 237, ''followed by cohabitation.''

Now the point is whether, under the facts of this case, paragraph a of chapter 237 has any application. The statute contains these two provisos:

''Provided that in the event the father, mother, guardian or one of the next of kin of both contracting parties, join in the application, and state under oath that both contracting parties are over the statutory age for marriage, then none of the provisions of this section shall apply.

''Provided further that in the event the circuit court clerk before whom application is made knows of his own knowledge, or is satisfied by the affidavit of two disinterested parties, that the parties applying are over the statutory age, then and in that event none of the provisions of this section shall apply, except that provided in subsection 'a' above. In no event, however, shall a license be issued by the clerk when it appears that the applicants are, or either of them is drunk, insane or an imbecile.''

It will be observed that paragraph a is expressly ex-

cepted from both of these provisos. The point is, did a violation of paragraph a invalidate this marriage where both parties had the right to marry under the law without the consent of any one else, and, in addition, where the father of appellee and a kinsman of appellant obtained the license for the marriage? The plain purpose of the statute was to prevent runaway marriages by juveniles below the age of consent. The history of the legislation on the subject shows that. Should it be extended to all ages because a technical construction of the language includes them? We think not.

In construing statutes, the chief desire of the courts is to reach the real intention of the Legislature, and knowing this to adopt that interpretation which will meet the real meaning, though such interpretation may be beyond or within, wider or narrower, than the mere letter of the statute. Unthought of results must be avoided if possible, especially if injustice follows, and unwise purpose will not be imputed to the Legislature when a reasonable construction is possible. Kennington v. Hemingway, 101 Miss. 259, 57 So. 809, 39 L. R. A. (N. S.) 541, Ann. Cas. 1914B, 392; Leaf Hotel Corporation v. City of Hattiesburg, 168 Miss. 304, 150 So. 779; Canal Bank & Trust Co. v. Brewer, 147 Miss. 885, 113 So. 552, 114 So. 127; City of Holly Springs v. Marshall County, 104 Miss. 752, 61 So. 703; Gunter v. City of Jackson, 130 Miss. 637, 94 So. 844; Huber v. Freret, 138 Miss. 238, 103 So. 3.

A literal construction of this statute would mean this: Take a man and a woman in their thirties or forties, or older; the parents of both are dead; their kin are far off in degree; they agree to marry; the clerk issues them a license without requiring them to comply with paragraph a of the statute, about which they know nothing; there follows the usual ceremonial marriage, and before cohabitation the man dies. Is the surviving woman his widow? Has she no rights in his property? Suppose that, in addition to the above, she is pregnant by him, they recognize their moral duty to marry and legitimatize

the child, and before cohabitation he dies. Is the child a bastard? We cannot believe the Legislature intended to include such cases within the meaning of the statute, although they may be included in its technical terms.

Hunt v. Hunt, supra, is not at all decisive of this question. That was exactly the kind of marriage the statute was intended to provide against. In that case the female was only thirteen years and ten months of age, while the male was only nineteen. The marriage was upheld, but only on the ground that cohabitation followed.

Affirmed.