**Elois Alyne VETRANO and Jerri Ann Vetrano, Minors, by their next friend, Adeline Foules Young Vetrano, Plaintiffs,**

v.

**John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.**

**No. GC 6533–K.**

United States District Court
N. D. Mississippi,
Greenville Division.

Sept. 26, 1968.

Joseph E. Wroten, Greenville, Miss., for plaintiffs.

H. M. Ray, U. S. Atty., Oxford, Miss., for defendant.

## OPINION OF THE COURT

KEADY, Chief Judge.

This is an action brought pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), against the Secretary of Health, Education, and Welfare, by Adeline Foules Young Vetrano, on behalf of her two minor children, Elois Alyne Vetrano and Jerri Ann Vetrano, to review a final decision of the Secretary denying a claim for monthly child's insurance benefits on the social security earnings record of their deceased father, Vincent Vetrano. It is asserted on behalf of the minors that plaintiff, a Negro, and the deceased, a foreign born Italian, were married at common law and that Elois and Jerri Ann Vetrano were the legitimate issue of that union. The govern-

ment does not dispute the eligibility of the children for payments for months after August, 1965, due to amendment of § 216(h) of the Act, 42 U.S.C. § 416(h), which permitted the children in this case to qualify for child's insurance benefits effective September 1, 1965,[1] and benefits accruing since that date have been paid. What is in controversy, however, is the government's administrative determination, and its position here, that Elois and Jerri Ann Vetrano were not the "children" of the wage earner, as that term was defined in § 216(h) of the Act prior to the 1965 amendment.

The administrative history of this case began on January 13, 1964, when plaintiff filed application for child's insurance benefits. This application was disallowed by the Social Security Administration initially on January 24, 1964, and again upon reconsideration at the plaintiff's request on March 11, 1964. From these adverse determinations, plaintiff requested a hearing de novo before a Hearing Examiner of the Bureau of Hearings and Appeals, Social Security Administration, which was held on June 18, 1964, in Greenwood, Mississippi. The Examiner found, after full evidentiary hearing, that the claimant minors were not the "children" of Vincent Vetrano, within the meaning of § 216(h) (2) of the Social Security Act, since they would not be entitled, under the laws of Mississippi, to share in the devolution of his interstate personal property.[2] His determination that children's benefits were

---

1. § 339 of Public Law 89–97 enacted on July 30, 1965, amended § 216(h) of the Social Security Act, 42 U.S.C. § 416 (h) to authorize payments for months after August 1965 to a child of a deceased individual who died insured under the Social Security Act if, prior to his death, the decedent had acknowledged the child in writing; or had been decreed by a court to be the father of the child. Vincent Vetrano acknowledged Elois Alyne Vetrano and Jerri Ann Vetrano to be his children in a letter to his attorney dated November 5, 1963, instructing him that they be provided for in his will although not to be designated as his daughters therein because of the racial situation. Moreover, in

an ex parte decree entered December 14, 1964, in the Chancery Court of Bolivar County, Mississippi, Vincent Vetrano was adjudged to be their father.

2. § 216(h) (2) of the Social Security Act, 42 U.S.C. § 416(h) (2), provides, in pertinent part, as follows:

"In determining whether an applicant is the child * * * of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property * * * by the courts of the State in which such insured individual * * * was domiciled at the time of his death * * *."

not authorized in this case was based on his finding that Elois and Jerri Ann Vetrano were the children of a miscegenetic union which was, at the time of the hearing, both void as a marriage and violative of the Mississippi criminal law.[3] The written opinion of the Hearing Examiner, issued September 29, 1964, reads as follows:

"It may be that the Supreme Court of the United States will declare the miscegenation statutes of the State of Mississippi and other States unconstitutional but so far that has not taken place * * *

"It is clear that [Elois and Jerri Ann Vetrano] have never been legitimated by a decree of any court and that the parties have never been ceremonially married and could not marry in the State of Mississippi and remain there or marry in some other State and return to that State. No order of paternity and support of the children has been entered. It is clear that these children do not meet the necessary legal relationship requirements under the laws of the State of Mississippi which is the *governing* forum in this case."

The plaintiff, following the decision of the Hearing Examiner unsuccessfully sought reversal of the decision in an appeal before the Appeals Council of the Social Security Administration. Following the affirmance by the Appeals Council plaintiff instituted this suit for judicial review of the administrative disallowance of the application. Both the United States and the plaintiff have moved for summary judgment, pursuant to Rule 56, F.R.Civ.P.

The basis for the Hearing Examiner's conclusion that the children were ineligible for benefits—that their parents were parties to an unlawful miscegenetic marriage—was largely vitiated by the June 12, 1967, decision of the United States Supreme Court in Loving v. Commonwealth of Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010, which held unconstitutional state statutes restricting the freedom to marry solely because of racial classifications. The decision of the Appeals Council issued on August 31, 1967, however, in adopting the Hearing Examiner's recommended decision, supplemented it to hold that "the evidence on the question of cohabitation and representation as husband and wife does not provide a basis for inferring a marital agreement." In short, the Appeals Council found that, aside from the issues created by the miscegenation laws, the parties neither agreed to be, nor represented themselves to the public as husband and wife, and, therefore, could not have been married at common law under Mississippi standards.[4]

Our role in reviewing the holding of the Appeals Council is limited to a consideration of whether such final decision of the Secretary is supported by substantial evidence. Clinch v. Celebrezze, 5 Cir. 1964, 328 F.2d 778. The governing statute, 42 U.S.C. § 405(g),

---

3. Miss.Code Ann. §§ 2748–01 and 2748–03 (Cum.Supp.1962) provide respectively that "All bigamous, incestuous, or miscegenetic marriages are void * * *", and that "* * * except for incestuous or *miscegenetic* marriages the issue of the parties to a void marriage conceived subsequent to the date thereof is legitimate * * *." (Emphasis added)

§ 459 of the Mississippi Code of 1942 (now repealed) reads as follows:

"The marriage of a white person and a negro or mulatto or person who shall have one-eighth or more of negro blood * * * shall be * * * unlawful and void; and any party thereto, on conviction, shall be punished," by sentence in the penitentiary, under § 2000 of said Code, for a term not exceeding ten years.

4. The Appeals Council also found that plaintiff was married to Charles Jeu Young on October 31, 1941, in Greenville, Mississippi, and that the marriage had not terminated either by death of Young or by court action at the time of Vincent Vetrano's demise. We do not reach the question of whether the union between Adeline and the decedent was bigamous, since we hold that no marriage was ever consummated between plaintiff and Vetrano.

provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." Measuring the record as a whole by this standard, we hold that the United States is entitled to judgment as a matter of law, since there is "substantial evidence" in the record to support the finding of the Appeals Council that the plaintiff and decedent had not entered into a valid marriage, either ceremonially or at common law, and that the claimant minors were not otherwise legitimated.[5]

There was developed at the hearing undisputed evidence that plaintiff and Vincent Vetrano began living together during the time when common law marriages were recognized in Mississippi.[6] The plaintiff testified that she and Vincent Vetrano resided together in Greenville, Mississippi, from September 1947 to September 1949, at which time they moved to Benoit, Mississippi, but that they returned to Greenville in December 1949. There is evidence that in 1953 the decedent opened a garage in Benoit, returning to Greenville, where plaintiff and the children still resided, on Tuesday, Thursday and Sunday nights. From 1955 until some time in 1962, plaintiff was employed as a beautician for the Veterans Administration in Downey, Illinois, during which period she returned to Mississippi about every three months and during her vacations to be with her children and her "husband", then living in Benoit. She stated that in 1962 she resigned her position with the Veterans Administration and returned to Mississippi, where she lived with the decedent and the children until his death on November 30, 1963. In short, she testified that she and the decedent considered themselves married, but that they were not free to unequivocally hold themselves out as such to the entire community because of the bias in the community against mixed marriages and because of their fear of prosecution under state laws punishing interracial marriage.

 We are not unmindful of the presumption which exists in the Mississippi jurisprudence in favor of the validity of a subsequent marriage, which is applicable to a subsequent common law marriage, as well as to a subsequent ceremonial marriage. Anderson-Tully Co. et al. v. Wilson, 221 Miss. 656, 74 So.2d 735, 76 So.2d 515 (1954). The presumption of the validity of marriage, be it ceremonial or at common law, is not to be confused, however, with the high degree of proof necessary for establishing the common law marriage once rebuttal evidence is presented. That a heavy burden of proof rests on one asserting, in the face of evidence to the contrary, the existence of a common law marriage is clearly expressed by the Mississippi Supreme Court in Whitman v. Whitman, 206 Miss. 838, 41 So.2d 22, 25 (1949), as follows:

"A claim of common-law marriage is regarded with suspicion and will be closely scrutinized. Thus, in order to establish a common-law marriage, *all* the essential elements of such a relationship * * * must be shown by

---

5. An illegitimate child may be legitimated if a County, Circuit, or Chancery Court grants the child inheritance rights from his father in a support and paternity order (Miss.Code Ann. § 383–12), or if, upon petition of the father, a Chancery Court decrees the child to be legitimate (Miss.Code Ann. § 1269–01). § 474 of the Mississippi Code provides that an illegitimate child acquires the legal status of a child of his father if his parents marry and the father acknowledges the child.

6. Marriage at common law was recognized in Mississippi first in 1856, and its va-

lidity was written into the Constitution of the State in 1869. The provision for common law marriage was omitted from the 1890 Constitution, but in 1906 the legislature again restored it. From then until 1956, when it was abolished by statute (Miss.Code Ann. § 465.5), marriage at common law was recognized in Mississippi. The abolition was not retroactive, however, so the alleged marriage of plaintiff to Vetrano must be evaluated in the light of the pre-1956 standards. See Bunkley and Morse's Amis, Divorce and Separation in Mississippi § 1.02(4).

*clear, consistent,* and *convincing evidence* * * *." [Emphasis added).

▮ The cases are abundant in Mississippi which hold that no relationship may constitute a common law marriage without there being such "clear, consistent, and convincing evidence" of two vital elements: an intent to be presently married, followed by cohabitation. See, e. g., Sims v. Sims, 122 Miss. 745, 85 So. 73 (1920). An examination of the evidence in the case sub judice reveals that both requisites are conspicuously absent.

▮ With respect to the requirement of intent, it cannot even be accepted by this court that the parties agreed unequivocally between themselves to be man and wife. Plaintiff testified that when she and the decedent began living together in September 1947 they had no understanding as to how long they would continue to do so, and that the relationship was due to be terminated at any time she was unfaithful. Plaintiff further stated that due to the "racial climate" in Mississippi, they agreed to postpone their marriage until Vetrano retired and they could move to Chicago, Illinois. Thus the relationship, from its inception, lacked the vital element of intent to be married as defined in Barton v. State, 165 Miss. 355, 143 So. 861 (1932), as follows:

> "The agreement between the parties must be unequivocal and free from any reservations, mental or otherwise, to the full extent that, when consummated by cohabitation, nothing less than a decree of divorce pronounced by a court of competent jurisdiction can dissolve the relation. *In order that there may be a valid common-law marriage, neither of the parties shall entertain the thought or intention that either of them could or would terminate the relationship without the consent of the state obtained in a valid proceeding in divorce."* (Emphasis added).

The agreement to enter into marriage at common law must be the product of the free and unimpaired will of the parties. Although we recognize that the parties to this alleged marriage agreed to live together, at least temporarily, we are powerless to inject into their arrangement, contrary to their intent, a mutual agreement going to the very core of the marital relationship.

Although the element of cohabitation has not always been a necessary ingredient in marriages at common law, it has consistently been required since as early as 1873. Dickerson v. Brown, 49 Miss. 357 (1873); Rundle v. Pegram, 49 Miss. 751 (1874).

▮ In 1935, the Supreme Court of Mississippi, in Hunt v. Hunt, 172 Miss. 732, 161 So. 119, defined the term "cohabitation" as follows:

> "The word 'cohabitation' as used in the marriage laws means the public assumption by a man and woman of the marital relation, and dwelling together as such, thereby holding themselves out to the public as being man and wife."

Even assuming, arguendo, that the parties subjectively intended to permanently live together as man and wife, they failed to convey this intention to the public. In fact, plaintiff testified that she and the deceased purposefully proclaimed themselves to be married only to those members of the community who did not look with disfavor upon the interracial aspect of their relationship.

Despite plaintiff's assertion that she and the decedent agreed to be husband and wife in 1947 and so held themselves out thereafter, the evidence in this case is overwhelmingly to the contrary. They purposely refrained from making their alleged marriage a matter of public record, and when Elois Alyne and Jerri Ann Vetrano were baptized in the Catholic Church, they were listed, based on data furnished the church by the decedent, as the children of Vincent Vetrano and Adeline Foules Young. Plaintiff's application for employment with the Veterans Administration was signed by her as "Miss Adeline Foules", and on ap-

pointment to her position she signed the Appointment Affidavits as "Adeline F. Young". She listed therein her aunt rather than Vincent Vetrano as the individual to be notified in case of emergency. The decedent's income tax returns for 1962 and 1963 do not list the plaintiff as a dependent. His will speaks of her as Adeline Young. The decedent, in his application for old-age benefits filed October 22, 1963, stated his marital status as "widower". When a Social Security Administration employee contacted him at their home concerning the application, both Vetrano and plaintiff acknowledged that they had two children but that they were not married. In plaintiff's application for a lump-sum death payment on the social security earnings record of Vetrano, she signed the application, not as his wife, but as "Adeline Young, Executrix of the Estate of Vincent Vetrano", and in her application for benefits for the children, she stated that she and the decedent were not married.

Although there was evidence in the record that plaintiff and the decedent, on occasions, represented themselves as married, and that they were recognized as the parents of Marilyn Young, plaintiff's daughter by her first husband, at the child's graduation from high school, it is apparent from the record that the Appeals Council was justified in finding that plaintiff had not established by "clear, consistent and convincing" evidence that she was the common law wife of the decedent.

Since it is suggested that the parties would have conducted themselves publicly as husband and wife but for their fear of prosecution under state criminal statutes banning interracial marriage, there is yet another issue left in this case: whether or not the decision of the United States Supreme Court in the *Loving* case, supra, relieves these parties of establishing the otherwise essential ingredient of "cohabitation". We hold that it does not. First of all, we are unable to assume from the record before us that fear of criminal prosecution was the sole reason that the parties refrained from holding themselves out to the general community as married. It may have been that they preferred to follow the mores or customs of the area for business, society or family reasons, or merely because they did not wish to be recognized as married because they did not consider themselves as husband and wife. Although it might be argued that the principal reason for their equivocal conduct was their fear of prosecution under a criminal law, then unknown to be unconstitutional, there cannot be supplied this essential ingredient of cohabitation to sustain a marriage.

The Court held in *Loving* that "there is patently no legitimate overriding purpose independent of invidious racial discrimination" which justifies the prohibition against interracial marriage. While agreeing that there is no "valid legislative purpose * * * which makes the color of a person's skin the test of whether his conduct is a criminal offense", McLaughlin v. State of Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L. Ed.2d 222, we do find legitimate reasons for the Mississippi requirement that parties who would be considered as man and wife so evince that intention publicly. The public has an interest in the institution of marriage, and, for that reason, Mississippi has enacted a comprehensive statutory scheme (Miss.Code Ann. § 461 et seq. 1942 Recomp.) for the issuance of marriage licenses by public officials and for public recordation thereof. The Mississippi requirement that, in order to consummate a marriage at common law, the parties must have conducted themselves unequivocally before the public in accordance with their intended relationship, is totally unrelated to race, serves to make the marriage a matter of public record, and is, therefore, no less legitimate than the statutory licensing requirements.

Since we find that there was "substantial evidence" before the Appeals Council upon which it could have determined that the parties failed to consummate a common law marriage under the

Mississippi standards, the motion of the United States for summary judgment should be sustained, and that of the plaintiff overruled.

An order will be entered in accordance with this opinion.