# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CT-00662-SCT

*PAMELA GAIL CARRINGTON, PERSONAL REPRESENTATIVE OF THE WRONGFUL DEATH BENEFICIARIES OF JAMES WILEY CARRINGTON, III, DECEASED*

*v.*

*METHODIST MEDICAL CENTER, INC.*

### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 04/25/96 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN GRAHAM HOLADAY |
| | SHANE F. LANGSTON |
| ATTORNEYS FOR APPELLEE: | RANDALL D. NOEL |
| | HEBER S. SIMMONS, III |
| | DOUGLAS T. MIRACLE |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 5/6/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/27/99 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. This is before the Court on writ of certiorari. We granted the petition for writ of certiorari to address a question of broad public importance in regard to the proper interpretation of Miss. Code Ann. § 41-21-105 (1993), which governs liability for actions taken during commitment of patients for mental treatment. We conclude that the Court of Appeals erred in affirming summary judgment in favor of Methodist Medical Center, Inc. pursuant to § 41-21-105, as this statute does not immunize negligent custodial care.

## I.

¶2. On December 14, 1992, the Chancery Court of Hinds County entered an order involuntarily committing James Wiley Carrington, III to the Mississippi State Hospital at Whitfield. That order, which provided that James Carrington would be temporarily placed at the Methodist Medical Center pending the

availability of a place at the Mississippi State Hospital, was executed pursuant to an existing general contract between Methodist and Hinds County.

¶3. On December 31, 1992, while still at the Methodist Medical Center, James Carrington committed suicide by hanging himself from the handle of a commode and died of anoxia due to strangulation. A wrongful death action was filed by Pamela Gail Carrington, as personal representative of the wrongful death beneficiaries of James Carrington. In the complaint, Carrington alleged that Methodist failed to exercise ordinary and reasonable care in the custody of James Carrington, that Methodist departed from the generally accepted and recognized standard of care and skill in the care and custody of James Carrington by: (1) failing to provide adequate constant surveillance until there was improvement in his depression, (b) failing to assess suicidal ideation on a regular basis, (c) failing to provide protection from self-harm, (d) failing to treat with anti-depressant medication, and (e) failing to assess his mental status. Carrington further alleged that upon admission to Methodist, the plan of treatment for James Carrington was that he be watched very closely, that this order was not changed, but was in effect at the time of James's death.

¶4. In its answer, Methodist admitted that the medical record reflected that Dr. Bross's plan was to watch James Carrington very closely; however, it denied that there was an order to that effect. Methodist affirmatively asserted that all of the care or treatment provided to James Carrington by the nurses and other employees, was proper and fully complied with the applicable standard of care; that the physicians who admitted, assessed, diagnosed, prescribed medication and treated James Carrington were not employees or agents of Methodist, but were independent contractors and that Methodist was not liable for their actions. Methodist also alleged that it was immune from liability pursuant to Miss. Code Ann. § 41-21-105 (1993).

¶5. On February 13, 1996, Methodist filed a motion to dismiss or, in the alternative, a motion for summary judgment on the grounds that Carrington failed to prove that it performed an intentional act which led to James Carrington's suicide and that it was immune pursuant to Miss. Code Ann. § 41-21-105 (1993).

¶6. In its order granting the motion for summary judgment in favor of Methodist, the trial court found that Methodist was immune from liability pursuant to Miss. Code Ann. § 41-21-105 (1993). The court denied Methodist's motion as it related to Methodist's remaining defenses.

¶7. On appeal, the Court of Appeals affirmed the judgment of the trial court. *Carrington v. Methodist Med. Ctr., Inc.,* 704 So. 2d 471 (Miss. Ct. App. 1997).

## **II**.

### *a.*

¶8. This Court employs a de novo standard in reviewing a trial court's grant of summary judgment. Summary judgment is proper where there exists no genuine issues of material fact, and judgment may be rendered as a matter of law. *State ex rel. Mississippi Ethics Comm'n v. Aseme*, 583 So. 2d 955, 957 (Miss.1991). In the present petition, this Court is presented with a question of law, i.e., the proper interpretation of Miss. Code Ann. § 41-21-105 (1993).

### *b.*

¶9. Carrington argues that Methodist is not immune from liability pursuant to section 41-21-105 of the Mississippi Code of 1972 because section 41-21-105 only provides a type of governmental immunity for

those who play an intimate role in the actual civil commitment process. She explains that, even if we find that the statute does apply, we should find that there are genuine issues of material fact as to whether Methodist was grossly negligent in its dealings with James Carrington.

¶10. The Court of Appeals found that Methodist acted in good faith in its dealings with James Carrington and that the record does not support a finding that any of Methodist's agents or employees had acted wilfully, maliciously, or in a grossly negligent manner. The court held that the trial court properly found that, as a matter of law, Methodist was entitled to summary judgment under the provisions of Miss. Code Ann. § 41-21-105 (1993).

¶11. In *Zeigler v. Zeigler*, 174 Miss. 302, 310, 164 So. 768, 770 (1935), we wrote: "In construing statutes, the chief desire of the courts is to reach the real intention of the Legislature . . . . Unthought of results must be avoided if possible, especially if injustice follows, and unwise purpose will not be imputed to the Legislature when a reasonable construction is possible." (citations omitted). Miss. Code Ann. Section 41-21-105, the statute at issue in the case sub judice, reads as follows:

> (1) All persons acting in good faith in connection with the preparation or execution of applications, affidavits, certificates or other documents; apprehension; findings; determinations; opinions of physicians and psychologists; transportation; examination; treatment; emergency treatment; detention or discharge of an individual, under the provisions of sections 41-21-61 to 41-21-107, shall incur no liability, civil or criminal, for such acts.

> (2) No civil suit of any kind whatsoever shall be brought or prosecuted against the board, any member thereof, any director or employee for acts committed within the scope of their employment, except for wilful or malicious acts or acts of gross negligence.

Miss. Code Ann. § 41-21-105 (1993).

¶12. Pursuant to an existing general contract between Methodist and Hinds County, Methodist provides temporary hospitalization of involuntarily committed mental patients pending the availability of space for the patient at the appropriate state facility. It is undisputed that Methodist provides emergency treatment for those patients temporarily housed in its facility.

¶13. In the view of this Court, Miss. Code Ann. § 41-21-105 intends to immunize good faith actions taken during the actual commitment process. It speaks to wrongful commitment, unlawful detention, battery (based on non-consensual treatment) and the like. It speaks to negligence only insofar as one might deviate from the appropriate standard of care in making the commitment decision. We do not believe that it is intended to immunize the negligent care which is alleged in this case. Persons deemed incapable of making rational judgments, such that they must be committed, are not to be protected by a lesser standard than reasonable care under the circumstances. The "lack of good faith" requirement is necessary and intended only to cure the absence of consent to treatment inherent in the involuntary commitment process.

¶14. We are fortified in this view by the observation that Miss. Code Ann. § 41-21-102 (6), which was enacted after § 41-21-105, enumerates patients rights and provides that persons receiving treatment under § § 41-21-61 to -107 have "the right to receive proper care and treatment, best adapted according to contemporary professional standards, to rendering further custody, institutionalization, or other services unnecessary. . . ." Miss. Code Ann. § 41-21-102 (6) (1993).

¶15. On the facts of this case, we conclude that a viable claim under Section 41-21-102(6) is alleged, such as would survive a summary judgment motion.

## III.

¶16. For the foregoing reasons, the judgment of the Court of Appeals is reversed, the judgment of the Hinds County Circuit Court is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

¶17. **REVERSED AND REMANDED.**

**SULLIVAN AND PITTMAN, P.JJ., McRAE AND WALLER, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER, C.J., MILLS AND COBB, JJ.**

**SMITH, JUSTICE, DISSENTING:**

¶18. I agree with the majority only on the issue that Miss. Code Ann. § 41-21-105 is applicable to the case *sub judice*. I must dissent because, in my view, Methodist can only incur civil or criminal liability if it acted wilfully or maliciously. Under these facts, Methodist's actions in dealing with James Carrington did not rise to a level of gross negligence, and therefore, the grant of summary judgment should be affirmed.

¶19. Carrington maintains that a twenty-four-hour watch of James Carrington would have prevented the foreseeable suicide from occurring and that Methodist's failure to maintain such a watch was an act of gross negligence. She explains that Methodist's standing orders required that Methodist's employees "[o]bserve patient at all times with vital signs twice daily" and that its failure to follow these orders was gross negligence within the meaning of section 41-21-105.

¶20. The Court of Appeals found that Methodist's failure to provide a 24-hour suicide watch of James Carrington, based on the wording of the standing hospital orders for such patients, was insufficient to create a jury issue on the question of gross negligence. The court explained that the "standing orders pertaining to temporary, involuntarily committed patients emphasize the necessity to provide a constant monitoring of such patients; however, only a strained reading of the orders would require such a patient to be within sight of a hospital employee at all times." The court further explained:

> The resulting difficulty inherently associated with providing a 24-hour attendant for every involuntarily committed patient suggest that such a literal reading of the orders is not what was intended by the contracting parties. The record is uncontroverted that Carrington was being monitored with a high degree of frequency. The fact that Carrington took advantage of the privacy between periodic observations to secrete himself in the bathroom and end his life is unfortunate. However, Carrington's heirs present no facts that would permit a jury to reasonably conclude that Carrington's propensity to self-destruction was so great that he required constant, around-the-clock, monitoring, even at such

times as tended to his bodily needs in the bathroom. Moreover, Carrington's survivors did not present the Court with any expert opinion evidence that would support a rational finding that Methodist's course of conduct was grossly negligent within the meaning of section 41-21-105(2).

¶21. After reviewing the record, it is clear to me that Carrington's allegation that the order of commitment provided for a twenty-four surveillance of James Carrington is not supported by the order of commitment included in the record. Neither is there a written order to the effect that James Carrington needed around the clock care.

¶22. I agree with the Court of Appeals that there is no basis to find that Methodist's actions rose to the level of being fairly characterized as wilful, malicious, or grossly negligent. Requiring employees of Methodist to maintain a twenty-four-hour watch as part of its emergency treatment of patients, temporarily placed in its custody, without direct or specific directions in the order of commitment, is an unthought of result when the statute specifically provides for immunity for such persons acting in good faith.

¶23. The majority writes that "[i]t (section 41-21-105) speaks to negligence only insofar as one might deviate from the appropriate standard of care in making the commitment decision." Maj. Op. at 5. Rather, Section 41-21-105 intends to immunize good faith actions taken during the commitment process and beyond in so much as the statute explicitly refers to " . . . treatment; emergency treatment; detention or discharge of an individual. . ." *See* Miss. Code Ann. 41-21-105(1) (1993 & Supp. 1998). In limiting the statute to the commitment process alone, the majority openly ignores its plain language.

¶24. Furthermore, the majority flaunts an open disregard to the legislative authority by effectively changing the appropriate standard, as follows:

> Persons deemed incapable of making rational judgments, such that they must be committed, are not be (sic) protected by a lesser standard than **reasonable care** under the circumstances once the "lack of good faith" requirement cures the absence of consent to treatment inherent in the involuntary commitment process.

Maj. Op. at 5-6 (emphasis added). Rather, the Legislature made itself clear when it stated as follows:

> (2) **No civil suit of any kind** whatsoever shall be brought or prosecuted against the board, any member thereof, any director or employee for acts committed within the scope of their employment, **except for wilful or malicious acts or acts of gross negligence.**

Miss. Code Ann. § 41-21-105(2) (1993) (emphasis added). It is clear to me that the majority has chosen to act as if subsection (2) of Section 41-21-105 does not exist.

¶25. Furthermore, the majority effectually recognizes that Carrington's proof and rebuttal to the summary judgment motion did not rise to the level of gross negligence as required under the statute. Rather than properly affirming, the majority instead creates a new standard from the thin air.

¶26. Finally, the majority concludes "that a viable claim under Section 41-21-102(6) is alleged, such as would survive a summary judgment motion." Maj. Op. at 6. Section 41-21-102(6) states in part:

> A person receiving services under sections 41-21-61 through 41-21-107 has the right to receive proper care and treatment, best adapted, according to contemporary professional standards, to

rendering further custody, institutionalization, or other services unnecessary.

Miss. Code Ann. § 41-21-102(6) (Rev. 1993). In finding that a viable claim exists under Section 41-21-102(6), the majority again chooses to ignore Section 41-21-105 and its plain language.

¶27. Therefore, in my view, the trial court properly determined that Methodist was entitled to judgment as a matter of law, and the Court of Appeals did not err in affirming the judgment of the trial court.

¶28. Accordingly, I respectfully dissent.

**PRATHER, C.J., MILLS AND COBB, JJ., JOIN THIS OPINION.**