362 So.2d 611 (1978)
Kay McGarrh SEYMORE, Administratrix of the Estate of Augustus K. McGarrh
v.
GREATER MISSISSIPPI LIFE INSURANCE COMPANY.
No. 50453.
Supreme Court of Mississippi.
August 30, 1978.
Rehearing Denied September 20, 1978.
*612 Jacobs, Griffith, Pearson, Eddins & Povall, John Kirkham Povall, Cleveland, for appellant.
Alexander & Johnston, Robert G. Johnston, Cleveland, for appellee.
Before ROBERTSON, SUGG and COFER, JJ.
ROBERTSON, Presiding Justice, for the Court.
On March 2, 1976, Kay McGarrh Seymore, Administratrix of the estate of Augustus K. McGarrh, deceased, filed suit against Greater Mississippi Life Insurance Company in the Circuit Court of the First Judicial District of Bolivar County, Mississippi, to recover the sum of $7,500, which plaintiff alleged to be the balance due on a $15,000 certificate of group credit life insurance issued to her father, A.K. McGarrh.
Plaintiff alleged that a $2,500 certificate of group credit life insurance was purchased by McGarrh on August 11, 1975, from defendant's agent, First National Bank of Rosedale, when he borrowed an additional $2,500 from the Bank. McGarrh purchased $15,000 of group credit life insurance from the defendant on December 5, 1975. The certificate of insurance was issued by the Bank through its president, H.E. McCaslin, who had continuously acted as the agent of defendant since June 20, 1970, the date of the master policy contract between the Bank of Beulah (predecessor to the First National Bank) and defendant. The premium for this level term (12 months) non-reducing $15,000 certificate of insurance was $300, of which premium $150 was deposited to the account of defendant in the First National Bank of Rosedale on December 9, 1975, and the remaining $150 was retained by the Bank as its commission for selling the insurance.
McGarrh died on December 10, 1975, at the age of 49. Proofs of death on the two McGarrh certificates were executed by the Bank and sent to the defendant on December 17, 1975.
On February 6, 1976, defendant wrote H.E. McCaslin, president of First National Bank, Rosedale, as follows:
"On August 11, 1975, you insured Mr. A.K. McGarrh for $2,500 level coverage on Certificate # 95512. Mr. McGarrh died on December 10, 1975, and we have determined that the insurance on this certificate is payable.
On December 15, 1975, we received Certificate # 107351 for $15,000 level coverage insurance to be effective December 5, 1975. This second certificate is, of course, $7,500 in excess of the maximum coverage provided in your Credit Life Insurance Master Policy. Since our investigation reveals that Mr. McGarrh was probably an acceptable Credit Life Insurance risk on the date of his loan, we have determined that $7,500 of this coverage may be accepted and liability assumed for that amount as a claim resulting from Mr. McGarrh's death on December 10. The balance of the coverage on this second certificate may not be accepted and is, therefore, rejected according to the terms of the master policy.
Enclosed is our check in the amount of $10,075 representing payment of the claim under certificate # 95512, payment of the balance of our maximum liability under Certificate # 107351 and a refund *613 of our portion of the premium on the excess insurance written on certificate # 107351.
Mr. McGarrh's account should, of course, be credited for an additional $75.00 representing a refund by the bank of the commissions retained on the excess insurance."
The plaintiff refused to accept this settlement and brought suit for $7500. Defendant answered that plaintiff stated no cause of action because the two certificates of insurance issued McGarrh totaled $17,500, and the master policy contract between the defendant and the Bank provided:
"SCHEDULE
1. Ages 18 through 54, inclusive, the amount of insurance not to exceed $10,000, terms may be extended through 60 months."
Defendant further answered that no provision of the master policy contract could be orally changed, modified or waived because the contract provided, under the heading "General Provisions":
"MODIFICATION: This Policy may be modified or amended at any time, subject to the laws of the jurisdiction in which it is delivered, without the consent of the Debtors insured hereunder, by written agreement between the Creditor and the Company.
"AUTHORITY: Only the President, a Vice-President, the Secretary or an Assistant Secretary of the Company has the power to change, modify or waive the provisions of this Policy and then only in writing."
After a full trial the court dismissed the jury, finding "that there are no issues or questions of fact for decision by the jury," and took the matter under advisement for decision in vacation. On June 23, 1977, the court, in a letter opinion, said:
"Among other things, the terms of the policy provide:... `Provided, however, that such amount of insurance shall not exceed ... the original principal amount of the borrower's note covering the loan in connection with which insurance is effective,'"
and then proceeded to find that, inasmuch as the amount of McGarrh's indebtedness to the Bank at the time of his death was $10,790, his estate was only entitled to recover $790 more from the defendant. The plaintiff thereupon perfected an appeal to this Court.
The appellant assigns as error:
The lower court committed reversible error in its findings when it limited Appellant's recovery by reliance on an issue outside the scope of and unresponsive to the pleadings.
Appellant contends in her brief that the lower court could not base its decision on an affirmative defense not raised by the appellee, not within the framework of the pleadings, and mentioned for the first time by the court itself after the trial had been completed and both sides had rested.
The liability ledger (two sheets, singlespaced) of the First National Bank of Rosedale, introduced without objection, listed a continuous series of loans to A.K. McGarrh beginning September 21, 1973. Listed also were payments on these loans beginning October 8, 1973. The amount of his indebtedness to the bank varied from a high of $27,126 on August 29, 1974, to $10,790 on December 9, 1975, the day before McGarrh's death.
The appellee's testimony was that it had authorized the Bank to issue two types of credit life insurance: one being the reducing type where as the loan was paid down the insurance decreased according to the diminishing balance of the loan; the other being the level type where the amount of the insurance remained constant for the entire term. The premium for the level type was double that for the reducing type. McGarrh purchased and paid for the level type: $15,000 group credit life insurance for a $300 premium, purchased December 5, 1975, for a term of 12 months.
H.E. McCaslin, president of the First National Bank of Rosedale and the agent of the appellee who sold and issued certificates of insurance based on the master policy, testified that in July, 1975, he personally *614 talked with Bob Wright, vice president of the defendant company and the officer in charge of the master policy issued McCaslin's Bank, and that Wright specifically authorized the issuance of certificates of insurance based on the master policy up to $20,000; that he issued for the appellee to Charles J. Wilson, on July 21, 1975, a certificate of group credit life insurance in the amount of $17,000; that no premium was refunded on this insurance and that it ran its course; that the $15,000 certificate to McGarrh was the second of five other certificates issued in excess of $10,000.
The master policy, containing the $10,000 limitation, issued to the Bank of Beulah by the defendant on June 20, 1970, was a secret contract as far as the plaintiff was concerned. It was between the defendant and its agent. In the certificate of insurance for $15,000 issued to McGarrh on December 5, 1975, there was no mention of any limitation on the amount of insurance that could be issued by the defendant's agent.
In finding against the insurer, this Court said, in Southern Insurance Co. v. Ryder Truck Rental, Inc., 240 So.2d 283 (Miss. 1970):
"It did contain a provision which, by inference, authorized the said agent to bind the company for insurance. However, insofar as the public is concerned, a secret contract between the agent and the insurance company cannot affect the status of the authority of the agent. As to the public, it is what the laws of Mississippi say and what the public is led to believe by the actions of the insurance company and agency. There is no proof whatsoever that any act of Busching or any statement of any kind made to the public (either by Southern or Busching) advised them of any limitations upon Busching's authority." 240 So.2d at 285. (Emphasis added).
In the case at bar, there was no proof whatsoever that the defendant or its agent advised McGarrh in any shape, form or fashion of any limitation on the amount of insurance that the Bank, as agent, could issue. Neither McGarrh nor his heirs were bound by any secret limitation contained in the master policy. Neither could McGarrh be bound by any secret provision in the master policy that it could only be amended "by written agreement between the Creditor and the Company".
We move on now to the only assignment of error, that the lower court committed reversible error in its findings when it limited Appellant's recovery by reliance on an issue outside the scope of and unresponsive to the pleadings.
Although defendant asserted five grounds of defense in its answer, it never asserted the affirmative defense that the master policy limited the amount of insurance that could be sold by the Bank as agent to the actual amount of McGarrh's indebtedness to the Bank. In fact, when plaintiff attempted to elicit testimony from Mr. McCaslin as to why he sold insurance to McGarrh, which at the time exceeded McGarrh's indebtedness to the Bank, the court sustained defendant's objection on the ground that such testimony would be irrelevant and immaterial.
The issues are framed, formed and bounded by the pleadings of the litigants. The Court is limited to the issues raised in the pleadings and the proof contained in the record. Judge Griffith, in his monumental work on Mississippi Chancery Practice, gave these sound reasons why it must be so:
"Courts do not instigate or initiate civil litigation. They act only when called on for aid, and only in respect to that which is within the call. The potentiality of a court to consider and determine a given class of cases over which it has jurisdiction is made actual, in a particular case within that class, only when a party entitled to relief with respect thereto has applied to the court by his written pleading and even then his written application must state the facts upon which it is based or else it will still be ineffectual to actuate the court to grant any relief. The power of the court, then, will be exerted only upon, and will not move *615 beyond, the scope of the cause as presented by the pleadings, for the pleadings are the means that the law has provided by which the parties may state to the court what it is they ask of the court and the facts upon which they ask it; and proof is received and is considered only as to those matters of fact that are put in issue by the pleadings, and never beyond or outside of them. If the rule were otherwise courts could become the originators instead of the settlers of litigious disputes, and parties would never know definitely what they will be required to meet or how to meet it." Griffith, Mississippi Chancery Practice (Second Edition 1950), § 564, pp. 586-87. (Emphasis added).
In 89 C.J.S. Trial, § 633b, at page 464 (1955), we find this language:
"The findings when compared with the pleadings must be within the issues and be responsive thereto, and must cover the material issues raised by the pleadings, and this is required whether or not evidence is introduced on such issues. It is improper to make findings outside the scope of the issues made by the pleadings; and where such findings are made, they are nugatory and cannot support conclusions of law or the judgment; they must be disregarded or treated as immaterial."
76 Am.Jur.2d, TRIAL, § 1264, at page 215 (1975), says:
"The findings of fact made by the court should respond to and be within the issues, and a finding outside the issues cannot be considered in determining whether the judgment is supported by the findings."
For the reasons stated, the judgment of the trial court is reversed, and judgment rendered here for the appellant in the sum of $7,500, plus interest as provided by law from February 9, 1976.
REVERSED AND RENDERED.
PATTERSON, C.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.
SMITH, P.J., took no part.