ON PETITION FOR REHEARING
This matter is presented to us by the appellee's petition for rehearing following our decision handed down March 30, 1983. Finding merit in appellee's petition, we hereby withdraw our previous decision and issue this as the opinion of the Court.
This appeal originated in the Chancery Court of Union County wherein Mark Mitchell, appellee, filed his amended petition to notify of heirship in the estate of Frances Mitchell Mayes, deceased. His mother was Gussie Wright, who lived on the estate of George Mitchell. Appellee alleged in his petition that his father was Mark L. Mitchell, the son of George Mitchell. Mark L. Mitchell was committed to the State Mental Hospital at Jackson in 1918 where he subsequently died in 1962. Mrs. Frances Mitchell Mayes, the sister of Mark L. Mitchell, died intestate on October 17, 1973, without children or lineal descendants. She was survived by one sister, Mrs. Ethel Mitchell Montgomery, her brothers Mark L. and Louie having predeceased her. Louie Mitchell died intestate and his estate was administered by the Chancery Court of Union County in Cause No. 2136. Letters of administration were issued on August 18, 1919. He was never married and had no lineal descendants. Appellee therefore sought one-half of the Mayes estate, which is estimated to be of the value of approximately $1,000,000.
At the conclusion of a rather lengthy hearing, the chancellor found that Gussie Wright and Mark L. Mitchell were never married, either ceremonially or by common law. However, based on the evidence, the chancellor found that appellee was the illegitimate *Page 64 
son of Mark L. Mitchell. The chancellor held that Mississippi Code Annotated section 91-1-15 (1972), in effect prior to the amendment of April 1, 1981, which barred an illegitimate child from inheriting from or through his intestate father unless the father married the mother and acknowledged the child, was unconstitutional in light of Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). The chancellor further held that Trimble should be given retroactive application to the death of Mrs. Frances Mitchell Mayes.
Mark L. Mitchell was born in 1883. Records from the Mississippi State Hospital showed he was admitted as a patient on April 22, 1918, and remained there until his death on August 22, 1962. It was believed at that time that Mitchell had never married nor that he had any lineal descendants. Although the records disclosed that Mark L. Mitchell was continuously institutionalized from 1918 until his death, the evidence disclosed, as will be shown, that he was seen in Union County as late as 1926. The court records reflected that Mark L. Mitchell was declared a lunatic and his sisters, Frances and Ethel, were appointed his guardians on June 2, 1924. On August 23, 1974, Ethel died testate and her will is being probated in the Chancery Court of Union County in Cause No. 9417.
On January 21, 1980, appellee filed his petition, which was subsequently amended on April 15, 1980, alleging he was entitled to one-half of the Mayes estate estimated to be of the value of approximately $1,000,000. At that time the estates of both Frances and Ethel remained open. The successor administrator of Frances' estate, the executor of Ethel's estate and the remainder beneficiaries of Ethel's will and their assigns were named as defendants to appellee's petition.
The proof showed appellee was born in Union County on October 26, 1918. His mother was Gussie Wright, a sharecropper's daughter who lived with her parents and brothers and sister on a farm owned by George Mitchell, Mark L. Mitchell's father. Throughout his life, as reflected by various records, his relatives and other acquaintances, appellee had been known as Mark Louie Mitchell and Mark George Mitchell. Appellant's middle names were allegedly derived from Louie Mitchell and George Mitchell, Mark L. Mitchell's brother and father.
The general reputation in the community was that Mark L. Mitchell was appellee's father. Gussie Wright also told various people that Mark L. Mitchell was appellee's father and that she and Mark had been secretly married. There was evidence that upon learning of Gussie's pregnancy, Gussie's mother visited George Mitchell who thereafter paid Mrs. Wright $15 a month for support of appellee. There was also evidence that appellee visited in the George Mitchell household, calling George Mitchell grandpa, and Ethel and Frances, Aunt Ethel and Aunt Fan. On one of these visits, in approximately 1923 or 1924, George Mitchell gave appellee a picture of Mark L. Mitchell and told him it was his father. This picture was produced at trial.
Mark L. Mitchell was seen sporadically in Union County until approximately 1926, although the records from the state hospital reflected his continuous confinement since 1918. During this time, Mark L. Mitchell frequently visited the Wrights. Also, in the late 1920's, Gussie had two more children who also went by the Mitchell name. Mark L. Mitchell, however, was never seen again in Union County following an alleged incident in 1926, when he poured motor oil over Frances' furniture.
Witnesses for the appellant, who were mostly third cousins of Frances, asserted they had never heard of appellee or any children of Mark L. Mitchell during family discussions. Mary Bean Lambert, who lived with Frances for about one year in 1926, asserted she never saw or heard appellee's name mentioned. She also denied any knowledge of the alleged motor oil incident. Evidently, the only thing that was ever said of Mark L. Mitchell was that he had been committed to the state mental hospital. When it was suggested to Frances that she prepare a will following her husband's *Page 65 
death, she replied a will would not be necessary because Ethel was her only living relative.
DID THE CHANCELLOR ERR IN DECIDING THE CAUSE ON A THEORY NOT IN ISSUE UNDER THE PLEADINGS?
Appellee in his original petition and amended petition alleged that he was the son of Mark L. Mitchell, deceased, and the nephew of Frances, deceased. Appellants entered a general denial thereto. Nowhere in appellee's petition or amended petition did he allege to be the illegitimate son of Mark L. Mitchell nor did he attack the constitutionality of Mississippi Code Annotated section 91-1-15 (1972). In fact, appellee sought to prove at trial that he was the legitimate son of Mark L. Mitchell by virtue of either the existence of a ceremonial or common law marriage between his mother and Mark L. Mitchell.
In Lucas v. Lucas, 415 So.2d 709 (Miss. 1982), this Court stated:
 This Court has quoted Griffith, Mississippi Chancery Practice, C.J.S. and Am.Jur.2d at length on this subject in Seymore v. Greater Mississippi Life Insurance Company, 362 So.2d 611 (Miss. 1978), in part as follows:
 The issues are framed, formed and bounded by the pleadings of the litigants. The Court is limited to the issues raised in the pleadings and the proof contained in the record. Judge Griffith, in his monumental work on Mississippi Chancery Practice, gave these sound reasons why it must be so:
 "Courts do not instigate or initiate civil litigation. They act only when called on for aid and only in respect to that which is within the call. The potentiality of a court to consider and determine a given class of cases over which it has jurisdiction is made actual, in a particular case within that class, only when a party entitled to relief with respect thereto has applied to the court by his written pleading and even then his written application must state the facts upon which it is based or else it will still be ineffectual to actuate the court to grant any relief. The power of the court, then, will be exerted only upon and will not move beyond, the scope of the cause as presented by the pleadings, for the pleadings are the means that the law has provided by which the parties may state to the court what it is they ask of the court and the facts upon which they ask it;
and proof is received and is considered only as to those matters of fact that are put in issue by the pleadings, and never beyond or outside of them. If the rule were otherwise courts could become the originators instead of the settlers of litigious disputes, and parties would never know definitely what they will be required to meet or how to meet it." Griffith, Mississippi Chancery Practice (Second Edition 1950), § 564, pp. 586-87. (Emphasis added).
 In 89 C.J.S. Trial, § 633 b, at page 464 (1955), we find this language:
 "The findings when compared with the pleadings must be within the issues and be responsive thereto, and must cover the material issues raised by the pleadings, and this is required whether or not evidence is introduced on such issues. It is improper to make findings outside the scope of the issues made by the pleadings; and where such findings are made, they are nugatory and cannot support conclusions of law or the judgment; they must be disregarded or treated as immaterial."
 76 Am.Jur.2d, Trial, § 1264, at page 215 (1975) says:
 "The findings of fact made by the court should respond to and be within the issues, and a finding outside the issues cannot be considered in determining whether the judgment is supported by the findings." (emphasis ours). (362 So.2d at 614-615)
415 So.2d at 712.
At the conclusion of the evidence presented by both parties, arguments were presented to the chancellor. It was at this juncture *Page 66 
that the constitutionality of section 91-1-15 was first mentioned.
Upon these facts, this case falls squarely within the confines of Estate of Miller v. Miller, 409 So.2d 715 (Miss. 1983). There Justice Roy Noble Lee, writing for the Court, so aptly stated:
 In his pleadings, appellee did not claim that he was entitled to inherit from J.D. Miller, deceased, as his illegitimate son, nor did he attack the constitutionality of MCA § 91-1-15 (1972), providing for descent among illegitimates, upon equal protection grounds as discriminating against illegitimates. While the appellant did plead the adverse possession statute, Section 15-1-7, Miss. Code Ann. (1972), as a bar to the claim of appellee, she did not plead the six-year general statute of limitations contained in Section 15-1-49, Miss. Code Ann. (1972). The parties, in their pleadings, should have hit the issues of illegitimacy, unconstitutionality and statute of limitations head on like two wild rams during the mating season. Instead, they danced, bobbed and weaved like boxers in the ring, skirting those questions.
409 So.2d at 716-17.
Concluding that the constitutionality of the statute was not properly before the lower court, we held:
 As stated, the record reflects that the constitutional question was not raised by the pleadings, or during the trial of the case below, seized upon and declared the statute, Section 91-1-15
(1972), unconstitutional. In State v. The Cabana Terrace, 247 Miss. 26, 153 So.2d 257 (1962), the court, quoting from Pacific States Box Basket Co. v. White, 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138 (1935), said:
 It is well-settled that the constitutionality of a statute will not be considered unless the point is specifically pleaded. 247 Miss. at 37, 153 So.2d at 260.
 See also Stewart v. City of Pascagoula, 206 So.2d 325 (Miss. 1968); Comfort v. Landrum, 52 So.2d 658 (Miss. 1951); Adams v. Board of Supervisors of Union County, 177 Miss. 403, 170 So. 684 (1936).
 [1] We are of the opinion that the constitutionality of the statute was not properly before the lower court and that the court erred in declaring the statute unconstitutional of its own volition.
409 So.2d at 718.
Based on the foregoing we hold that the chancellor erred by deciding this case upon a theory not in issue under the pleadings. Because the case must be reversed, we need not reach the other assignments of error. For the above reasons, the cause is reversed and remanded to the chancery court to allow the parties to amend their pleadings, if they desire, and proceed therein.[1]
Upon consideration of the appellee's petition for rehearing, we hereby withdraw our opinion of March 30, 1983, and issue this decision as the opinion of the Court. Reversed and remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.
[1] It is noted that the legislature further amended Mississippi Code Annotated section 91-1-15 on March 14, 1983, five days after this case was argued before this Court.