IN THE SUPREME COURT OF MISSISSIPPI
NO. 93-CA-00874-SCT

*CITY OF JACKSON, MISSISSIPPI*

*v.*

*LAKELAND LOUNGE OF JACKSON, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/19/93 |
| TRIAL JUDGE: | HON. W. O. DILLARD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | SARAH O'REILLY-EVANS |
| | TERRY WALLACE |
| ATTORNEY FOR APPELLEE: | CHRIS N. K. GANNER |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 12/12/96 |
| MOTION FOR REHEARING FILED: | 12/27/96 |
| MANDATE ISSUED: | 2/20/97 |

**BEFORE SULLIVAN, P.J., SMITH AND MILLS, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The City of Jackson (City) enacted amendments to their zoning ordinance. The amendments were enacted in an effort to regulate adult entertainment within the City. Lakeland Lounge, Inc. (Lakeland) incorporated for the purpose of opening a club offering adult entertainment in the form of topless dancing. Lakeland opened a club on Lakeland Drive called "Danny's" which offered topless dancing. Danny's location at 1925 Lakeland Drive, Jackson, MS, is zoned general commercial C-3. However, according to the City zoning ordinance, adult entertainment is allowed only in areas zoned light industrial, I-1.

¶2. This legal dispute originated in February of 1992. This case has been before the Federal District Court of the Southern District of Mississippi three times, and before the United States Fifth Circuit of Appeals once. The City brought suit in Hinds Chancery Court to enforce the Fifth Circuit's ruling that the zoning ordinance is constitutional. Chancellor Dillard ruled that the zoning ordinance is unconstitutional and now the case is before this Court.

**I.**

**A.**

¶3. In September 1991, "Tiffany's", a night club offering adult entertainment in the form of topless dancing, opened in Jackson, MS. Due to public uproar, the City tried to close down the club on a technical code violation but failed. A few weeks later a second club called the "Longhorn Gentleman's Club" opened providing the same form of adult entertainment. In September the mayor directed the zoning director to begin a process for adopting a public measure that would address the public concerns. *Lakeland Lounge of Jackson, Inc. v. City of Jackson, Miss.*, 973 F.2d 1255, 1256-7 (5th Cir. 1992); *City of Jackson, Miss. v. Lakeland Lounge of Jackson, Inc.*, 800 F.Supp. 455, 458 (S.D.Miss. 1992).

¶4. On January 28, 1992, the City amended its zoning ordinance to regulate and disperse adult entertainment establishments. The amended ordinance requires adult entertainment businesses to locate in I-1 light industrial zoning districts and may be permitted in the central business district with a use permit. Additionally, adult entertainment businesses may not locate within 250 feet of each other or more than 1,000 feet from a church or school, park, playground or residential area. Pre-existing adult businesses were given three years to comply. The amendments to the ordinance went into effect on February 27, 1992. *City of Jackson*, 973 F.2d at 1257; 800 F.Supp. at 459.

¶5. These regulations were prompted by the City Attorney's office and the City Planing Department. These City departments collected materials, studies and ordinances from other areas concerning adult entertainment. These studies and materials addressed the effects that adult entertainment has on local communities. The materials concluded that adult entertainment businesses had negative secondary effects on the areas where they are located. *Id.*, at 1257; 800 F.Supp. at 458.

¶6. In January, 1992, Lakeland was incorporated for the purpose of operating a restaurant/lounge with adult entertainment in the form of topless dancing. Lakeland received a beer license from the city and state and executed a lease for property in an area zoned as C-3 "general commercial." *Id.*, at 1257. On February 12, 1992, Lakeland applied for a building permit to expand operational space. At the time of the application, Lakeland was not in operation nor was the amended ordinance in effect. When the City caught wind that Lakeland was going to offer adult entertainment, the City refused to issue a building permit for expansion. *City of Jackson*, 800 F.Supp. at 458.

¶7. On February 20, 1992, Lakeland filed suit in Hinds County Chancery Court seeking injunctive relief which would require the City to issue the building expansion permit. Lakeland's request was denied. Therefore, on February 27, 1992, Lakeland sued the City in United States District Court under cause number J92-0123(B). Lakeland sought to have the ordinance declared unconstitutional and its enforcement enjoined. The district court denied Lakeland's motion for a temporary restraining order. On April 30, 1992, Judge Barbour declared the ordinance unconstitutional and permanently enjoined its enforcement. Judge Barbour found the City had nothing to support its assertion that adult entertainment establishments have negative or detrimental secondary effects on the surrounding community. The City appealed to the Fifth Circuit for a motion to stay Judge Barbour's opinion. *Lakeland Lounge*, 973 F.2d at 1257; 800 F.Supp. at 459.

¶8. Lakeland continued its efforts to obtain various building permits. Lakeland continually applied for an expansion permit. An additional controversy arose concerning another Building Code section mandating a certificate of occupancy. The City continually denied the applications and found various violations of the building code. On May 6, 1992, Lakeland opened for business. On May 8, 1992,

Lakeland informed the City of its opening. Lakeland claimed that they were in compliance with all building code sections. On May 13, 1992, the City filed a complaint in Hinds County Chancery Court charging that Lakeland was operating in violation of the building code. Lakeland filed for removal to the federal court based on a federal question. Upon removal to federal court, cause no. J92-0283(W), Lakeland filed a counterclaim and motion for injunctive relief to prohibit the City from continuing a pattern and course of conduct which interferes with the free exercise of a right protected by the First Amendment of the United States Constitution. Judge Wingate found that the City's refusals to issue permits violated protected speech. However, since the case was predicated upon the constitutionality of the zoning ordinance, and the constitutionality of the ordinance was pending in the Fifth Circuit from cause no. J92-0123(B), Judge Wingate determined to stay the instant holding in the case until the Fifth Circuit ruled on the City's motion to stay. *City of Jackson*, 800 F.Supp. at 459-60, 467-68.

¶9. On October 5, 1992, the United States Court of Appeals for the Fifth Circuit reversed Judge Barbour's ruling and found that the zoning amendment was constitutional. *Lakeland Lounge v. City of Jackson, Miss.*, 973 F.2d 1255 (5th Cir. 1992). In short, the Fifth Circuit concluded that "the Jackson City Council properly considered the secondary effects of adult business and provided sufficient alternative avenues of expression for them." *Id.*, at 1260. On November 4, 1992, the Fifth Circuit denied Lakeland's petition for rehearing. *Lakeland Lounge v. City of Jackson, Miss.*, 979 F.2d 211 (5th Cir. 1992). On April 19, 1993, the United States Supreme Court denied *writ of certiorari. Lakeland Lounge v. City of Jackson, Miss.*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 469 (1993).

## B.

¶10. On December 9, 1992, the City hand delivered a letter to Lakeland's counsel, the late Mathew Moore. The letter advised that Lakeland's adult entertainment activities conducted at the premises known as "Danny's" violate the Zoning Ordinance and demanded the cessation of such activity immediately. Lakeland continued to provide topless dancing entertainment.

¶11. On December 11, 1992, the City filed a complaint against Lakeland in Hinds Chancery Court cause no. 150,720. The complaint sought injunctive relief preventing Lakeland from doing business in the form of topless dancing which is in violation of the City's Zoning Ordinance. Chancellor Robinson granted an *ex parte* temporary restraining order restraining Lakeland from providing adult entertainment on December 11, 1992 at 2:50 p.m. Furthermore, Chancellor Robinson set a hearing for the preliminary injunction to be held on December 22, 1992. At 8:20 p.m. on December 11, 1992, Chancellor Robinson dissolved the temporary restraining order claiming that Lakeland did not have sufficient notice pursuant to MRCP 65.

¶12. On December 21, 1992, Lakeland filed for a removal of the action to the United States District Court for the Southern District of Mississippi under 28 U.S.C. § 144, alleging federal question jurisdiction pursuant to 28 U.S.C. § 1331. The City made a motion to remand to Hinds County Chancery Court. On March 8, 1993, United States Magistrate Nicols granted the City's motion for remand. The federal court clerk sent a certified copy of the order to the clerk of the state court. *City of Jackson, Miss. v. Lakeland Lounge*, 147 F.R.D. 122 (S.D. Miss 1993).

¶13. On March 11, 1993, Hinds County Chancery Court filed a notice of hearing before Chancellor Dillard. The hearing pertained to the City's motion for a temporary restraining order. On March 22,

1993, Lakeland filed a motion for continuance. The motion stated that U.S. Magistrate Judge Nicols' March 8, 1993, order of remand was being appealed to United States District Judge Barbour pursuant to the local rules of the Southern District of Mississippi, and the Federal Rules of Civil Procedure. Therefore, Lakeland's motion stated that any action by Hinds County Chancery Court would be premature.

¶14. On March 24, 1993, Chancellor Dillard heard Lakeland's motion for continuance on the City's motion for a temporary restraining order. At the hearing, Mr. Moore, counsel for Lakeland, stated that Judge Barbour would not grant a stay as to Judge Nicols' remand and an opinion and order would be issued on the ruling later. However, Lakeland still maintained that Hinds County Chancery Court's jurisdiction of the matter was premature since the federal court had not given a final ruling on the appeal of the magistrate's remand. After hearing matters from both sides, Chancellor Dillard denied Lakeland's motion for continuance. Dillard granted the City's motion for a temporary restraining order but stayed the order until Judge Barbour of the federal court made a ruling on the remand.

¶15. On March 29, 1993, Chancellor Dillard issued a temporary restraining order restraining Lakeland from providing topless dancing. On the same day, the City Attorney's office hand delivered a letter to Lakeland's counsel, Mr. Moore, advising of the temporary restraining order. On March 31, 1993, the City filed in Hinds Chancery Court a motion for contempt and to extend the temporary restraining order. On April 7, 1993, Chancellor Dillard extended the temporary restraining order for another ten days.

¶16. On April 1, 1993, Judge Barbour determined that the federal court no longer had jurisdiction of the case *sub judice*. ***City of Jackson, Miss v. Lakeland Lounge***, 147 F.R.D. 122, (S.D.Miss. 1993). Therefore, on April 16, 1993, a hearing was held before Chancellor Dillard on motions for a temporary restraining order, preliminary and permanent injunction, and a citation for contempt. The City argued that Lakeland violated the temporary restraining order which was first issued on March 29 and extended on April 7, 1993, and is therefore in contempt of court because Lakeland continues to perform female topless dancing. Lakeland contended that the ordinance was vague and ambiguous and therefore unconstitutional since it failed to give notice of the precluded behavior.

¶17. Chancellor Dillard dissolved the temporary restraining order and denied the motion to hold anyone in contempt. Dillard concluded that an essential part of the ordinance, "Specified Anatomical Areas", could be interpreted in at least two different ways. Citing MRCP 65(d), Dillard concluded that the order had the problem of notice. Chancellor Dillard based his conclusion on the fact that only counsel for Lakeland, Mr. Moore, had been served the order, and that Lakeland had not been served.

¶18. In response to the City's motion for clarification of the judgement to determine the interpretation of Section 8, paragraph 202.80(a), Specified Anatomical Areas, on July 9, 1993 Chancellor Dillard issued an Opinion of the Court defining the ordinance section in question. Chancellor Dillard held that according to the Fourteenth Amendment to the United States Constitution requiring equal protection, "females have equal rights to expose their breast to the same extent as would a male." The trial court, citing ***Reed v. Reed***, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), stated the ordinance is constitutional and enforceable only if the reference to gender is struck. The trial court also concluded that section 202.80(a) Specified Anatomical Areas is "hopelessly and constitutionally

ambiguous." The trial court, citing *Zeigler v. Zeigler*, 174 Miss. 302, 164 So. 768 (1935), stated that according to the law, a statute "must be construed to avoid unthought of and unjust results." However, the trial court found that the section was vague and ambiguous, and therefore unconstitutional. Furthermore, the trial court discounted arguments from both sides that the parties were barred by *res judicata* and collateral estoppel citing *Dunaway v. W.H. Hopper and Associates, Inc.*, 422 So.2d 749 (Miss 1982) and *Moore v. Molpus*, 578 So.2d 624 (Miss. 1991). In conclusion, the court granted a permanent injunction with the exception to the exposure of the female breast.

¶19. The City filed a notice of appeal to this Court on July 28, 1993. The appeal concerns the Chancellor's denying of the permanent injunction with respect to the City's Adult Entertainment Ordinance regulating the exposure of the female breast.

¶20. Before addressing the City's contentions of error by the lower court, this Court notes that Lakeland, appellee, did not submit a brief. This Court in numerous cases has stated ". . . that the failure of the appellee to file a brief is tantamount to a confession of error and will be accepted as such unless we can with confidence say, after considering the record and brief of appellant, that there was no error." *Snow Lake Shores Property Owners v. Smith*, 610 So.2d 357, 361 (Miss. 1992) (*quoting* *Burt v. Duckworth*, 206 So.2d 850, 853 (Miss. 1968)). The chancellor found that the ordinance was unconstitutional since the ordinance is vague and ambiguous and violates the equal protection clause. The chancellor also concluded that Lakeland was not barred under the doctrine of *res judicata*. This Court finds that the trial court erred and will address each error.

## II.

### WHETHER THE CHANCERY COURT ERRED IN FINDING THAT THE CITY OF JACKSON'S ADULT ENTERTAINMENT ORDINANCE IS VAGUE AND AMBIGUOUS AND THEREFORE UNCONSTITUTIONAL AND UNENFORCEABLE?

¶21. The section of the ordinance in dispute reads as follows:

> **202.80(a) Specified Anatomical Areas** Less than completely and opaquely covered human genitals, pubic region, buttocks, anus or *less than 50% of the female breast below a point immediately above the top of the areolae*; or human male genitals in a discernibly turgid state even if completely and opaquely covered. (Emphasis)

¶22. Lakeland argues that the ordinance is clear and straightforward. Lakeland contends that the ordinance is penal in nature and therefore should be construed strictly. Thus, Lakeland interprets the ordinance to specifically state that an establishment violates the ordinance if an establishment allows a female dancer to expose less than 50% of her breast from a point immediately above the areola.

¶23. The City holds that Lakeland's interpretation is ridiculous and ludicrous. The City also claims that the ordinance is clear and unambiguous. Female dancing with less than 50% of the breast covered constitutes a "specified anatomical area". Thus, the City claims that female topless dancing in general commercial C-3 zones violates the ordinance. However, the ordinance allows topless dancing in light industrial I-1 zones.

¶24. In the July 9, 1993 opinion, Chancellor Dillard found that the language of the ordinance is constitutionally vague and ambiguous due to conflicting interpretations of the ordinance. Dillard went on to illustrate various examples of what he felt the language could mean. First, Dillard reiterated Lakeland's position that female dancers must dance with their breasts more than 50% exposed in general commercial zones. Second, Dillard reiterated the City's position that female breasts must be at least 50% covered in general commercial zones. Dillard then questioned the City's position by asking as to what 50% of the breast must be covered. However, the ordinance specifically states that the measurement of the area of the breast required covered begins "below a point immediately above the top of the areolae."

¶25. The ordinance reads in pertinent part: Adult entertainment establishments are defined as "behavior which is characterized by the exposure of less than 50% of the female breast below a point immediately above the top of the areola." However, when read with the entire "specified anatomical area" one grasps a better gist of what is prohibited, which reads: "Less than completely and opaquely covered human genitals, ..., or less than 50% of the female breast...." Even if the City did not word the ordinance as clearly as possible, obviously the section prohibits topless dancing in an ordinance designed to regulate adult entertainment. A proper interpretation is that exposure of 50% of the female breast, determined 50% exposed if not covered from below the top the mid-point (the areola) of the breast, constitutes a specified anatomical area. In simpler terms, if less than 50% of the breast is covered, then such action constitutes a specified anatomical area.

¶26. However, even if the ordinance is not absolutely entirely clear, case law demands a common sense interpretation and deference to the legislature. In **Ziegler**, 174 Miss. at 310, this court wrote:

> In construing statutes, the chief desire of the courts is to reach the real intention of the Legislature . . . . Unthought of results must be avoided if possible, especially if injustice follows, and unwise purpose will not be imputed to the Legislature when a reasonable construction is possible." (Cites omitted)

Certainly, requiring a woman to expose more than 50% of her breast is an unthought of result when the ordinance's specific purpose is to regulate topless dancing.

¶27. In **Meeks v. Tallahatchie County**, 513 So.2d 563 (1987), this Court addressed the contours of the vagueness doctrine. **Meeks** recognized that languages are inherently ambiguous and what is important is whether the ordinary person of common intelligence understands what is allowed and not allowed. **Meeks**, 513 So.2d at 567. **Meeks** relied on the United States Supreme Court:

> [A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process.

**Meeks**, at 566 (*citing* **Connally v. General Construction Co.,** 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1925)).

¶28. A long line of cases reiterate the notion that the court take into account the legislative intent, as well as, not construe the wording so as to impute a nonsensical or imputed meaning. In **Quitman County v. Turner**, 196 Miss. 746, 18 So.2d 122 (1944), this Court dealt with a dispute over the

statutory interpretation of the Mississippi Code which involved the establishment of courts and judges' salaries. This Court wrote:

> Legislative intent as an aid to statutory construction, although often elusive to the unaided vision, remains nevertheless the pole star of guidance . . . . We are not to construe clarity out of obscurity but intent out of inconsistency . . . .
>
> . . . It is our duty to support a construction which would purge the legislative purpose of any invalidity, absurdity or unjust inequality. ***Robertson v. Texas Oil Company***, 141 Miss. 356, 362, 106 So. 449 (1925).

***Quitman County***, 196 at 759-60. *See also* ***Thornhill, et al. v. Ford***, 213 Miss. 49, 56 So. 23 (1951) (stating that the Court construe statutes consistent with the obvious intent unless repugnant to the context of the statute.).

¶29. The general manager of Danny's, Jason Downing, testified on the interpretation of the ordinance. Downing's interpretation is important for two reasons. First, Downing tells the female dancers what they are allowed to do and not do. Secondly, and more importantly, Downing represents the imaginary average person, the person of common intelligence discussed in ***Meeks***. Downing stated that the ordinance meant that "a certain part of the breast has to be covered with latex, a colored latex, that's not see-through." In other words, the breast must be at least 50% covered. The areola represents the 50% point. Any exposure below the top of the areola would constitute exposure of more than 50% of the breast and therefore constitute adult entertainment.

¶30. Lakeland's interpretation that females must expose at least 50% of their breasts in order to comply with the zoning ordinance is absurd. The policy behind the zoning ordinance was to regulate adult entertainment establishments in order to protect the community from the secondary effects of adult businesses. ***Lakeland Lounge***, 973 F.2d at 1260. Thus, Lakeland's interpretation imputes an unwise, unjust, unreasonable construction of the ordinance. The ordinance clearly demands that establishments not located in an industrial I-1 zone keep female breasts at least 50% covered.

### III.

**WHETHER AN ORDINANCE HELD TO BE CONSTITUTIONAL BY THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT CAN BE CHALLENGED IN STATE COURT BY THE SAME PLAINTIFF ON DIFFERENT CONSTITUTIONAL GROUNDS AND FOUND CONSTITUTIONAL?**

¶**31.** The City argues that Lakeland is precluded from raising the claim that the ordinance is unconstitutional based on the notion of vagueness and ambiguity. The City contends that when Lakeland challenged the constitutionality of the ordinance pertaining to the time, place, manner analysis in ***Lakeland Lounge***, *supra*, then Lakeland should have also raised any other constitutional issues as well. Furthermore, the City contends that since the federal court remanded this case in ***City of Jackson, Miss. v. Lakeland Lounge of Jackson, Inc***.,147 F.R.D. 122, then the federal court ruled that there was no federal question and that the ordinance had been determined constitutional. Therefore, the City contends that Lakeland is precluded from challenging the constitutionality of the

ordinance based on the doctrine of *res judicata.*

¶32. The doctrine of *res judicata* requires the presence of four identities: (1) identity of the subject matter of the action; (2) identity of the cause of action; ( 3) identity of the parties to the cause of action; (4) identity of the quality or character of a person against whom the claim is made. ***Dunaway***, 422 So.2d at 751; ***Mississippi Employment Security Commission v. Georgia Pacific Corp.***, 394 So.2d 299 (Miss. 1981); ***Cowan v. Gulf City Fisheries, Inc.***, 381 So.2d 158 (Miss. 1980); ***Standard Oil Co. v. Howell***, 360 So.2d 1200 (Miss. 1978). If all four identities are present, then the parties are precluded from relitigating any issues in a subsequent lawsuit if decided in a prior lawsuit.[1] ***Dunaway***, at 751; ***Pray v. Hewitt***, 254 Miss. 20, 179 So.2d 842 (1965); ***Golden v. Golden***, 246 Miss. 562, 151 So.2d 598 (1963). Furthermore, *res judicata* is conclusive not only of what was actually contested, but also all matters that might have been litigated and determined in that suit. ***Pray***, 254 Miss. at 24. All claims which have been litigated in a prior suit, as well as all claims which should have been litigated in the prior suit, are barred from relitigation under the doctrine of *res judicata.* ***Johnson v. Howell***, 592 So.2d 998, 1002 (Miss. 1991); ***Riley v. Moreland***, 537 So.2d 1348, 1354 (Miss. 1989); ***Dunaway,*** at 751. "Where one has a choice of more than one theory of recovery for a given wrong, she may not assert them serially in successive actions but must advance all at once on pain of the bar of *res judicata*." ***Walton v. Bourgeois***, 512 So.2d 698, 702 (Miss. 1987).

¶33. Factor 1, identity of the subject matter, is the zoning ordinance and its constitutionality. Factors 3 and 4, concerning the parties to the action, are the City and Lakeland. Thus, factors 1, 3, & 4 meet the identity requirement. The only real question is whether factor 2, the identity of the cause of action, is the same. Identity of the cause of action exists when there is a commonality in the "underlying facts and circumstances upon which a claim is asserted and relief sought from the two actions." ***Riley***, 537 So.2d at 1354, *citing* ***Walton,*** 512 So.2d at 701. Lakeland initiated litigation seeking to have the ordinance declared unconstitutional because the City was interfering with the free exercise of a right protected by the First Amendment to the United States Constitution. ***City of Jackson***, 800 F.Supp. at 456. The Fifth Circuit ruled that the ordinance and the City's actions were constitutional. While the federal court cases determined the constitutionality of the City's public policy consideration involving the secondary effects of adult entertainment and the pending ordinance doctrine, the underlying issue was topless entertainment. Arguably Lakeland contested one aspect of the ordinance in the first line of cases and now raises a more specific challenge which the courts have not yet determined. However, in light of case law, Lakeland should have challenged the specific language of "specified anatomical areas" when it challenged the constitutionality of the City's conduct and intentions. Because a party may not relitigate and attempt to elude *res judicata* by raising a new legal theory, Judge Dillard was incorrect in not finding that Lakeland's challenge to the constitutionality of the ordinance was barred.

**IV.**

> **WHETHER THE CHANCERY COURT HAS AUTHORITY, *SUA SPONTE*, TO MAKE FINDINGS AND ENTER A JUDGEMENT ON ISSUES THAT WERE NOT RAISED OR PRESENTED BY EITHER PARTY TO THE LITIGATION?**

¶**34.** The City sought a permanent injunction against Lakeland for its continued violation of Section

202.80(a) of the ordinance when Lakeland presented topless dancing at Danny's night club. Lakeland only contested the wording of the ordinance, section "specified anatomical areas", as to what part of a female's breast must be covered and/or exposed. Chancellor Dillard ruled on the constitutionality of the ordinance stating that it was vague and ambiguous. However, Chancellor Dillard also ruled on the constitutionality of the ordinance as it pertained to the Equal Protection Clause, a claim that neither party pled or brought up at trial. Namely, Dillard held that females have the same right as males in exposing their breast; and therefore, the reference to female must be stricken in order to uphold the constitution.

¶**35.** Chancellor Dillard's ruling counters court rules and procedures. "It is well-settled that the constitutionality of a statute will not be considered unless the point is specifically pleaded." *State v. The Cabana Terrace, Inc.*, 247 Miss. 26, 37, 153 So.2d 257 (1963)(Lee); *Pacific States Box and Basket Company v. White*, 296 U.S. 176, 80 L.Ed. 138, 56 S.Ct. 159 (1935).

¶36. In *Witt v. Mitchell*, 437 So.2d 63 (Miss. 1983), this Court specifically addressed whether a chancellor may decide a case based on a theory not in issue under the pleadings. In *Witt*, the appellee Mark Mitchell sought one-half of Frances Mitchell Mayes' estate based on the allegement that his father was Mark L. Mitchell, brother of Mrs. Mayes. *Witt*, 437 So.2d at 63. The Chancellor found that the appellee was the illegitimate son of Mark L. Mitchell. The Chancellor further held that Miss. Code Ann. § 91-1-15 (1972), which determined an illegitimate's inheritance from the father, was unconstitutional. *Id.*, at 64. Nowhere did appellee allege he was the illegitimate son of Mark L. Mitchell or attack the constitutionality of § 91-1-15. On the contrary, appellee alleged and sought to prove that he was the legitimate son. *Id.*, at 65. This Court concluded that the chancellor erred by deciding the case upon an issue not in issue under the briefs. *Id.*, at 66. In determining the result, this Court relied on *Lucas v. Lucas*, 415 So.2d 709, 712 (Miss. 1982); *Seymore v. Greater Mississippi Life Insurance Co.,* 362 So.2d 611, 614-15 (Miss. 1978). This Court has quoted Griffith, *Mississippi Chancery Practice*, C.J.S. and Am.Jur.2d at length on this subject in part as follows:

> *The issues are framed, formed and bounded by the pleadings of the litigants.* The Court is limited to the issues raised in the pleadings and the proof contained in the record. Judge Griffith, in his monumental work on Mississippi Chancery Practice, gave these sound reasons why it must be so: "Courts do not instigate or initiate civil litigation. They act only when called on for aid and only in respect to that which is within the call. The potentiality of a court to consider and determine a given class of cases over which it has jurisdiction is made actual, in a particular case within that class, only when a party entitled to relief with respect thereto has applied to the court by his written pleading and even then his written application must state the facts upon which it is based or else it will still be ineffectual to actuate the court to grant any relief. *The power of the court, then, will be exerted only upon and will not move beyond, the scope of the cause as presented by the pleadings, for the pleadings are the means that the law has provided by which the parties may state to the court what it is they ask of the court and the facts upon which they ask it;* and proof is received and is considered only as to those matters of fact that are put in issue by the pleadings, and never beyond or outside of them. If the rule were otherwise courts could become the originators instead of the settlers of litigious disputes, and parties would never know definitely what they will be required to meet or how to meet it." Griffith, *Mississippi Chancery Practice* (Second Edition 1950), § 564, pp. 586- 87. (Emphasis added).

In 89 C.J.S. Trial, § 633 b, at page 464 (1955), we find this language:

"The findings when compared with the pleadings must be within the issues and be responsive thereto, and must cover the material issues raised by the pleadings, and this is required whether or not evidence is introduced on such issues. *It is improper to make findings outside the scope of the issues made by the pleadings; and where such findings are made, they are nugatory and cannot support conclusions of law or the judgment; they must be disregarded or treated as immaterial."* 76 Am.Jur.2d, Trial, § 1264, at page 215 (1975) says:

*"The findings of fact made by the court should respond to and be within the issues, and a finding outside the issues cannot be considered in determining whether the judgment is supported by the findings."* (emphasis ours). (362 So.2d at 614-615), (415 So.2d at 712).

437 So.2d at 65.

¶37. The only constitutional issue before Chancellor Dillard was whether specific wording in the ordinance was vague and ambiguous. The Equal Protection Clause issue was not before the court. Therefore, Judge Dillard's ruling that females have an equal right to expose their breasts as that of a male exceeded the powers of an officer of the court because the Equal Protection Clause argument was not in either parties' petitions, nor argued at trial.

**V.**

**WHETHER THE CHANCERY COURT ERRED IN FINDING THAT THE CITY OF JACKSON'S ADULT ENTERTAINMENT ORDINANCE WAS UNCONSTITUTIONAL UNDER THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION BECAUSE FEMALES HAVE EQUAL RIGHTS TO EXPOSE THEIR BREASTS TO THE SAME EXTENT AS WOULD A MALE?**

¶**38.** In the July 9, 1993, opinion, Chancellor Dillard held that under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, "females have equal rights to expose their breast to the same extent as would a male." Chancellor Dillard cited ***Reed v. Reed***, 404 U.S. 71, 30 L.Ed.2d 225, 92 S.Ct. 251 (1971). Chancellor Dillard held that the ordinance was constitutional and enforceable only if the reference to gender was struck. However, regulating female topless dancers is essential in an adult entertainment ordinance. As analyzed previously, Chancellor Dillard went outside of the pleadings, lacked proper jurisdiction and was barred by the doctrine of *res judicata.* However, even if Chancellor Dillard did not lack jurisdiction, his conclusion that the ordinance violates the Equal Protection Clause is incorrect.

¶39. In ***Reed***, the United States Supreme Court stated that the Fourteenth Amendment does not deny States the power to treat people of different classes in different ways. ***Reed***, 404 U.S. at 75, 92 S.Ct. at 253, 30 L.Ed.2d at 229. However, the Equal Protection Clause does deny States the power to legislate statutes which treat different classes differently when the criteria for different treatment and classes is wholly unrelated to the objective of the statute. ***Id.***, at 75-76, 92 S.Ct. at 254, 30 L.Ed. at 229. "A classification 'must be reasonable, not arbitrary, and must rest upon some ground of

difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'" *Id.*, at 76, 92 S.Ct. at 254, 30 L.Ed.2d at 229; *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920). In order to withstand constitutional challenge, a gender classification "1) must serve important governmental objectives and 2) must be substantially related to achievement of those objectives." *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct 451, 457, 50 L.Ed.2d 397 (1976) (citations omitted).

¶40. In *Michael M. v. Sonoma County Superior Court*, 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981), the United States Supreme Court stated that statutes treating males and females differently were not unconstitutional when reflecting the realistic differences between the sexes. The Equal Protection Clause does not "require 'things which are different in fact . . . to be treated in law as though they were the same.'" *Michael M.*, 450 U.S. at 469, 101 S.Ct. at 468, 67 L.Ed.2d at 442 (citations omitted). The U.S. Supreme Court "has consistently upheld statutes where gender classification is not invidious, but rather realistically reflects the fact that sexes are not similarly situated in certain circumstances." *Id.*, at 469, 101 S.Ct. at 468, 67 L.Ed.2d at 442. Courts must not disregard physiological differences in evaluating Equal Protection Clause issues. *Id.*, at 481, 101 S.Ct. at 1210-11, 67 L.Ed.2d at 450 (J. Stewart, *concurring*).

¶41. The federal courts on many occasions have held that denying females the right to expose their breasts, but not males, did not violate either the First Amendment or the Equal Protection Clause. In *Craft v. Hodel*, 683 F.Supp. 289 (Mass. 1988), petitioners challenged a regulation banning nude bathing in Cape Cod National Park. They alleged that the regulation violated the Fifth Amendment equal protection[2] component because males were permitted to walk and swim and play "shirt free" but females were not permitted to do so. *Craft*, 683 F.Supp at 299. The *Craft* court stated that the distinction "simply recognizes a physical difference between the sexes which has implications for the moral and aesthetic sensitivities of a substantial majority of the country." *Id.*, at 300. *Craft* inevitably found that allowing males to expose their breasts, but not females, was substantially related to an important governmental objective. *Id.*, at 299-301. *But see People of New York v. David*, 585 N.Y.S.2d 149 (1991) (holding that local ordinance prohibiting females from exposing their breasts on public beach violated the Equal Protection Clause by not serving a legitimate government interest better than a content neutral law because male and female breasts are physiologically similar except for lactation capability).

¶42. In *United States v. Biocic*, 928 F.2d 112 (4th Cir. 1991), the fourth circuit determined that a female's exposure of her breasts, but not male breasts, in a national park violated a federal regulation defining indecency. The regulation withstood various constitutional challenges. The fourth circuit determined that the distinction between exposure of male and female breasts was substantially related to an important governmental interest, and therefore did not violate the Equal Protection Clause. The court determined that:

> The important governmental interest is the widely recognized one of protecting the moral sensibilities of that segment of society that still does not want to be exposed willy-nilly to public displays of various portions of their fellow citizens' anatomies that traditionally in this society have been regarded as erogenous. These still include (whether justifiable or not in the eyes of all) the female, but not the male, breast.

***Biocic***, 928 F.2d at 115-16.

¶43. The United States Supreme Court has determined that regulation of nude and female topless dancing does not violate the United States Constitution. See ***Barnes v. Glen Theatre, Inc.***, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991). The federal courts have addressed the Equal Protection Clause issue in connection with state ordinances which regulate adult entertainment by restricting the exposure of females' breasts, but not males' breasts. ***Tolbert v. City of Memphis, Tenn.***, 568 F.Supp. 1285 (W.D. Tenn. 1983), held that restricting the exposure of female breasts did not violate the Equal Protection Clause. The court reasoned, "In our culture, for the purpose of this type of ordinance, female breasts are a justifiable basis for a gender-based classification." ***Tolbert***, 568 F.Supp. At 1290; *see generally* ***Mississippi University for Women***, 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982).

¶44. Finally, the Fifth Circuit, on at least two occasions, has upheld adult entertainment ordinances that regulate exposure of female breasts, but not male breasts, challenged under the Equal Protection Clause. ***SDJ, Inc. v. City of Houston***, 837 F.2d 1268 (5th Cir. 1988); ***Hang On, Inc. v. City of Arlington***, 65 F.3d 1248 (5th Cir. 1995). In both cases, the Fifth Circuit held that regulation of female breasts, but not male breasts, was substantially related to the City's interest in regulation. Therefore, according to case law, the chancellor erred in determining that the ordinance violated the Equal Protection Clause.

¶45. In conclusion, a common-sense reading and interpretation of the ordinance is not vague and ambiguous. The constitutional challenges to the city ordinance were precluded under the doctrine of *res judicata* because Lakeland had already had its day in court and failed to make said challenges. Since a trial judge may only rule on issues pleaded before the court, the chancellor erred by going outside the scope of the pleadings by determining that females have the same right as males in exposing breasts. Finally, the chancellor erred in determining that the ordinance violated the Equal Protection Clause by prohibiting females from exposing their breasts, but not males.

¶46. **REVERSE AND RENDERED.**

**LEE, C.J., PRATHER, P.J., PITTMAN, BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**

1. Collateral estoppel, on the other hand, precludes parties from relitigating the exact issue in a different and subsequent cause of action. ***Dunaway***, at 751.

2. The ordinance applied to a National Park, and therefore the 5th Amendment applied. The Fourteenth Amendment applies to state ordinances.